MUNICIPIO DE ARECIBO, peticionario, *v.* MUNICIPIO DE QUEBRA-DILLAS, recurrido.

*Número:* CC-2002-816     *Resuelto:* 16 de noviembre de 2004

*Lorenzo G. Llerandi Beauchamp*, abogado de la parte peticionaria; *Edgar Hernández Sánchez* y *Germán R. Monroig Pomales*, abogados de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

(En reconsideración)

En esta ocasión tenemos la oportunidad de resolver la solicitud de reconsideración presentada por el Municipio de Quebradillas a la opinión del Tribunal en *Mun. Arecibo v. Mun. Quebradillas*, 161 D.P.R. 109 (2004). En síntesis,

se alega que la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales,([1]) creada por la Ley Núm. 80 de 3 de junio de 1980,([2]) es una "agencia" sujeta a las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico.([3]) Por lo tanto, en reconsideración se nos solicita que, conforme a la doctrina de jurisdicción primaria, devolvamos el caso de marras a dicha Comisión para su resolución inicial.

La solicitud de reconsideración del Municipio de Quebradillas nos lleva a advertir la importancia de la función de la Comisión para Resolver Controversias Interagenciales para el proceso de cobro de deudas entre las agencias a las que aplica la referida Ley Núm. 80 de 1980. En ésta se dispone un mecanismo particular especializado que provee la agilidad y la economía procesal necesarias para el cobro de deudas con el propósito de proteger el fisco de las agencias e instrumentalidades del gobierno central y de los gobiernos municipales. Con el propósito de reafirmar la intención de la Asamblea Legislativa de proteger la autonomía fiscal de dichas entidades al establecer mediante la aprobación de la Ley Núm. 80 de 1980 un mecanismo administrativo para adjudicar controversias de deudas y pagos entre éstas, reconsideramos nuestra decisión anterior.

## I

El caso de autos trata sobre un pleito en cobro de dinero que presentó el Municipio de Arecibo contra el Municipio de Quebradillas ante el Tribunal de Primera Instancia. Luego de varios incidentes procesales, el Municipio de

---

([1]) En adelante, la Comisión para Resolver Controversias Interagenciales o la Comisión.

([2]) 3 L.P.R.A. sec. 1751 *et seq.* (Ley Núm. 80 de 1980).

([3]) Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.* (L.P.A.U.).

Quebradillas solicitó la desestimación de la demanda. Alegó que el Municipio de Arecibo debió de acudir en primer lugar a la Comisión para Resolver Controversias Interagenciales creada por la Ley Núm. 80 de 1980, que es la agencia con jurisdicción para resolver la presente controversia. En su escrito de oposición a la desestimación, el Municipio de Arecibo sostuvo que la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos), Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4001 *et seq.*), derogó implícitamente la Ley Núm. 80 de 1980, al concederle a los municipios autonomía administrativa para disponer de sus ingresos y de la forma de recaudarlos e invertirlos.

El Tribunal de Primera Instancia denegó la solicitud de desestimación. De ese dictamen, el Municipio de Quebradillas acudió ante el Tribunal de Apelaciones, el cual revocó al foro de instancia. Inconforme con el dictamen del tribunal apelativo, el Municipio de Arecibo acudió ante nos mediante una solicitud de *certiorari.* Luego de revisar su solicitud, le concedimos un término al Municipio de Quebradillas para que compareciera y mostrara causa, si alguna tuviese, por la cual no debíamos expedir el auto solicitado y revocar la sentencia dictada por el Tribunal de Apelaciones en el presente caso. En cumplimiento con nuestra orden, el Municipio de Quebradillas compareció. Examinados los argumentos de las partes, mediante opinión del Tribunal emitida el 22 de enero de 2004 revocamos la sentencia del Tribunal de Apelaciones. *Mun. Arecibo v. Mun. Quebradillas,* supra. En síntesis, resolvimos que la jurisdicción del Tribunal de Primera Instancia prevalece sobre la jurisdicción de la Comisión en estos casos. En cuanto a la Comisión para Resolver Controversias Interagenciales, determinamos que se trataba de un mecanismo que tienen a su disposición las agencias gubernamentales y los municipios para lograr expeditamente acuerdos entre sí.

Así las cosas, el Municipio de Quebradillas presentó ante nos una moción de reconsideración. Examinados sus argumentos, procedemos a reconsiderar nuestra decisión en el caso de autos. En esta ocasión, concluimos que la Comisión para Resolver Controversias Interagenciales es una "agencia administrativa" conforme se define en la L.P.A.U., que tiene jurisdicción primaria para atender controversias como la de este caso. Por consiguiente, resolvemos que el Tribunal de Primera Instancia debió abstenerse conforme a dicha normativa jurisdiccional y desestimar la acción presentada por el Municipio de Arecibo. Veamos.

II

A. El propósito central de la L.P.A.U. fue disponer un cuerpo de reglas mínimas que proveyeran uniformidad al proceso decisorio y reglamentario de la administración pública. *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992). Con ella se creó un andamiaje de reglas que deben observarse por toda agencia al formular reglas y reglamentos que definan los derechos y deberes de la ciudadanía y al adjudicar los derechos y deberes de personas particulares. Íd., pág. 897. La L.P.A.U. aplica "a todos los procedimientos administrativos conducidos ante todas las agencias que no estén expresamente [excluidas]". 3 L.P.R.A. sec. 2103. En *Olmeda Díaz v. Depto. de Justicia*, 143 D.P.R. 596, 599 (1997), aclaramos que, con excepción de las entidades, funciones y actividades expresamente excluidas, la L.P.A.U. aplicaba a todos los procedimientos administrativos ante todas las agencias.

Conforme a lo anterior, y para asegurar que la mayor parte del Gobierno del Estado Libre Asociado de Puerto Rico estuviera cubierto, la L.P.A.U. adoptó la definición más dilatada del término "agencia". *Olmeda Díaz v.*

*Depto. de Justicia*, supra. Así, se dispone que "agencia" significa

> ... cualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona, entidad *o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión*, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar .... (Énfasis suplido.) 3 L.P.R.A. sec. 2102(a).

■ De esta definición se excluyen varias entidades gubernamentales como el Senado y la Cámara de Representantes de la Asamblea Legislativa, la Rama Judicial, la propia Oficina del Gobernador, la Guardia Nacional de Puerto Rico, los municipios, la Comisión Estatal de Elecciones, el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, y la Junta Asesora del Departamento de Asuntos del Consumidor sobre el Sistema de Clasificación de Programas de Televisión y Juguetes Peligrosos. 3 L.P.R.A. sec. 2102. Esta disposición fue recientemente enmendada para excluir, de igual forma, a la Oficina de Conciliación y Arbitraje de la Comisión de Relaciones del Trabajo para el Servicio Público de Puerto Rico. Véase Ley Núm. 44 de 10 de enero de 2004, (Parte 1) Leyes de Puerto Rico 226.

■ Con excepción de los expresamente excluidos, todos los organismos gubernamentales autorizados por ley a *"reglamentar"*, *"investigar"* o *"adjudicar"* se rigen por la L.P.A.U. 3 L.P.R.A. sec. 2102(a); *Pagán Ramos v. F.S.E.*, supra, pág. 899. Asimismo, se entiende que una agencia administrativa es cualquier organismo o entidad gubernamental que no sea una corte o un cuerpo legislativo, y que afecte derechos de partes privadas mediante la adjudicación o la reglamentación. *Pagán Ramos v. F.S.E.*, supra.

■ En *Ortiz v. Panel F.E.I.*, 155 D.P.R. 219 (2001), reiteramos que el término "agencia" de la L.P.A.U. se define de manera "sumamente amplia". A esos efectos, expresamos que:

De hecho, es tan amplia que prácticamente cobija a todas y cada una de las agencias administrativas del Estado Libre Asociado, "las cuales se encuentran ubicadas en la rama ejecutiva del gobierno". Surge asimismo que la determinación de si un foro es o no una "agencia" claramente gira en torno a las funciones que esté legalmente *autorizada* a llevar a cabo. *Es decir, la disyuntiva de si una agencia, cuerpo, instrumentalidad, funcionario, oficina, etc., debe ser o no considerada una "agencia", ha de resolverse en atención a la autoridad legal que tiene para actuar o disponer de un asunto de manera final y obligatoria.* (Citas y escolios omitidos, énfasis en el original y énfasis suplido.). *Ortiz v. Panel F.E.I.*, supra, pág. 239.

■ La determinación de qué es una agencia administrativa conlleva un análisis abarcador y complejo que incluye una comparación de las disposiciones legales que crean la entidad jurídica con la regulación principal de nuestro ordenamiento administrativo, a saber: L.P.A.U. Si cierta entidad es o no una "agencia administrativa", es una determinación que requiere que se examine el propósito y las funciones que legalmente se le asignaron en comparación con el andamiaje legislativo dispuesto en la L.P.A.U. *Ortiz v. Panel F.E.I.*, supra; *Pagán Ramos v. F.S.E.*, supra. La necesidad de proceder con este análisis se hace más patente cuando estamos en casos como el de autos, en el cual la ley habilitadora en cuestión fue aprobada con anterioridad a la aprobación de la L.P.A.U.

En resumen, nuestra jurisprudencia es clara en cuanto a hacer efectiva la intención legislativa al aprobar y enmendar la L.P.A.U. de establecer un cuerpo mínimo de reglas uniformes "cuyos efectos alcan[cen] *a toda la operación de la Rama Ejecutiva del Gobierno y afect[en] a toda la ciudadanía" y de "excluir de su alcance solamente un pequeño número de entidades expresamente identificadas en [el texto de la ley]".* (Énfasis suplido y en el original.) Íd.,

págs. 900–901, *citando* el Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. de la C. 1120 de 23 de octubre de 1990, pág. 4, en ocasión de la aprobación de ciertas enmiendas a la definición de agencia de la L.P.A.U.

Vista la normativa anterior, veamos las particularidades de la ley orgánica de la Comisión con el fin de precisar si ésta se trata de una agencia según la L.P.A.U.

■ B. La Comisión para Resolver Controversias Interagenciales fue creada con el propósito de que investigara controversias sobre deudas y pagos entre agencias gubernamentales y determinara el modo en que debería pagarse la cantidad adeudada y el monto de dicha cantidad, si esto último estuviera en controversia. Informe de la Comisión de Gobierno de la Cámara de Representantes de Puerto Rico de 24 de abril de 1980 sobre Alcance de la Medida del P. de la C. 1289, pág. 1.[4] El "objetivo principal" de la medida fue

> ... establecer un mecanismo legal y administrativo para resolver, de manera aceptable para las partes, las controversias que surgen entre Agencias del Gobierno por concepto de pagos y deudas entre éstas. Íd., pág. 2.

■ La preocupación que la Asamblea Legislativa se propuso atender al aprobar esta la ley fue proveer a las agencias involucradas en la prestación de servicios a otras agencias un mecanismo que adjudicara de manera rápida cualquier controversia al respecto. Informe, *supra*. Se buscó proteger "las operaciones y liquidez de las agencias de tipo corporativo así como las operaciones fiscales de las agencias concernidas",[5] con la creación de un mecanismo que redu-

---

[4] El Informe de la Comisión de Gobierno del Senado de Puerto Rico reproduce sustancialmente el contenido del Informe de la Comisión de Gobierno de la Cámara de Representantes.

[5] Se mencionó que las agencias mayormente concernidas eran la entonces Autoridad de Teléfonos, la Autoridad de Energía Eléctrica, la Autoridad de Acueductos y Alcantarillados, la Autoridad de Edificios Públicos, la Autoridad de Comunicaciones y la Administración de Servicios Generales.

jera el retraso de los pagos por razón de discrepancias entre las partes en cuanto al monto y otros detalles de las facturas por servicios. Informe, *supra*.

En la Exposición de Motivos de la referida legislación se enfatiza la importancia de la selección particular de los miembros de la Comisión. A esos efectos se señala que sus miembros, a saber, el Secretario de Justicia, el Secretario de Hacienda y el Director de la Oficina de Gerencia y Presupuesto, cuentan con el "personal técnico, especializado y capacitado para entender en este tipo de controversia". Exposición de Motivos de la Ley Núm. 80 de 1980, Leyes de Puerto Rico, pág. 242.[6]

Esta ley se compone de tres artículos. En el primer artículo se crea la Comisión para Resolver Controversias Interagenciales y se señala que estará compuesta por el Secretario de Justicia, el Secretario de Hacienda y el Director de la Oficina de Gerencia y Presupuesto. 3 L.P.R.A. sec. 1751. En este artículo, además, se define el término "agencias gubernamentales" como "cualquier departamento, junta, comisión, negociado, división o cualquier otro organismo gubernamental, *incluyendo a las corporaciones públicas y a los municipios*". (Énfasis suplido.) Íd.

El segundo artículo de la ley especifica que la Comisión tiene poder para investigar controversias entre agencias sobre pagos y deudas y para determinar el monto de la cantidad adeudada y su modo de pago. 3 L.P.R.A. sec. 1752. Con ese propósito, se provee que la Comisión puede requerir que le sean presentados libros, documentos o cualquier evidencia necesaria para adjudicar las controversias ante sí. Íd. También podrá interrogar testigos bajo juramento y solicitar al Tribunal de Primera Instancia una or-

---

[6] La Exposición de Motivos de la Ley Núm. 80 de 1980, Leyes de Puerto Rico, pág. 242, no amplía mucho más lo que se expresa en el Informe de la Comisión de Gobierno de la Cámara de Representantes preparado como parte del proceso de aprobación por la Asamblea Legislativa. La ley fue aprobada sin enmiendas y no hay discusión sobre su alcance en el historial legislativo. Véase 34 Diario de Sesiones de la Cámara de Representantes de 24 de abril de 1980.

den judicial a esos efectos *so pena* de desacato. Íd. Asimismo, este segundo artículo dispone que la Comisión designará de entre el personal de las agencias que dirigen sus miembros, los recursos necesarios para cumplir con sus funciones. Íd. Por último, en este artículo se expresa la facultad de la Comisión para Resolver Controversias Interagenciales de formular y adoptar los reglamentos necesarios para el desempeño de sus funciones, los cuales deberán ser aprobados por el Gobernador. Íd.([7])

Por último, el tercer artículo de la Ley Núm. 80 de 1980 establece que el procedimiento investigativo puede iniciarse a petición de parte o motu proprio, cuando la Comisión considere que se está lesionando la solvencia económica o los servicios esenciales prestados por las agencias en controversia. 3 L.P.R.A. sec. 1753. Un examinador presidirá las vistas ante la Comisión y formará el expediente del caso. Íd. Luego de escuchar todas las partes y recibir la evidencia necesaria, dicho examinador someterá a la Comisión un informe con sus recomendaciones para que ésta haga su determinación final. Íd. Se dispone que la determinación de la Comisión "será final y firme y no será apelable ante ningún organismo judicial o cuasi judicial". Íd.

C. A la luz del examen precedente de la definición de *agencia* en la L.P.A.U., su jurisprudencia interpretativa y la Ley Núm. 80 de 1980, debemos concluir que la Comisión para Resolver Controversias Interagenciales es ciertamente una agencia administrativa.([8])

---

([7]) Conforme a esta disposición, la Comisión aprobó el Reglamento Interno de la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales de 24 de diciembre de 1985.

([8]) Esta no es la primera vez que este Tribunal tiene ante su consideración las controversias que presenta el caso de epígrafe. En *Aut. Desp. Sólidos v. Mun. San Juan*, 150 D.P.R. 106 (2000), revocamos mediante sentencia al entonces Tribunal de Circuito de Apelaciones por éste haber atendido un recurso de revisión judicial presentado fuera de los términos dispuestos en la L.P.A.U. En esa ocasión se solicitó la revisión judicial de la denegatoria de la Comisión de desestimar una acción por falta de jurisdicción sobre la materia. Lo importante de esta sentencia es que partimos de la premisa básica de que dicha Comisión era propiamente una agencia administrativa a la cual le aplicaba la L.P.A.U.

■■ La Comisión es una entidad gubernamental autorizada por ley a *investigar y adjudicar* controversias sobre derechos y obligaciones entre personas específicas, que no está expresamente excluida de la aplicación de la L.P.A.U. Aunque no es un tribunal ni un cuerpo legislativo, está facultada para adjudicar derechos e intereses de terceros y puede aprobar la reglamentación pertinente para conducir dicho proceso adjudicativo.

El propósito central de la Comisión, como ya se dijo, es servir como "un mecanismo legal y administrativo para resolver ... las controversias que surgen entre Agencias del Gobierno por concepto de pagos y deudas entre éstas". Informe, *supra*, pág. 2. La Comisión tiene poder para investigar y adjudicar controversias económicas entre agencias particulares. Con ese propósito, puede requerir la presentación de documentos o cualquier evidencia necesaria, interrogar testigos bajo juramento y solicitar al Tribunal de Primera Instancia que ordene la comparecencia de testigos o entrega de documentos. Se dispone, además, la intervención de un oficial examinador encargado de presidir la vista y rendir un informe a la Comisión para que ésta haga su determinación final. Estas son las características que de ordinario presentan las agencias administrativas regidas por la L.P.A.U. Son las mismas que el legislador asignó a la Comisión para Resolver Controversias Interagenciales, a pesar de que ésta fue creada antes de la aprobación de la L.P.A.U.

En definitiva, a la luz de la amplitud del alcance de la L.P.A.U., de su definición de lo que es una agencia administrativa y de las funciones y facultades asignadas en la ley orgánica de la Comisión para Resolver Controversias Interagenciales, procede concluir que esta última en efecto es una agencia administrativa.

■■ D. Cabe aclarar que el Municipio de Arecibo no tiene razón al alegar que la Ley de Municipios Autónomos

de 1991 derogó tácitamente la Ley Núm. 80 de 1980. El propósito de la Ley de Municipios Autónomos fue reformar la organización y el funcionamiento de la administración pública de los municipios. *López v. Mun. de Mayagüez*, 158 D.P.R. 620 (2003). Ésta promueve como política pública la independencia administrativa de los municipios frente al gobierno central, y con ese fin se

> ... otorg[a] a los municipios el máximo posible de autonomía y [se les provee] herramientas financieras, así como los poderes y facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico. Art. 1.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001 n. (Propósito)

En cuanto al poder y facultad de un municipio para cobrar sus deudas en particular, se dispone:

> Será obligación del alcalde realizar todas las gestiones necesarias para el cobro de todas las deudas de personas naturales o jurídicas que estuviesen registradas en los libros o récords de contabilidad a favor del municipio *y recurrirá a todas las medidas que autoriza la ley para cobrar dichas deudas dentro del mismo año fiscal en que se registren o hasta la fecha del cobro. En los casos que sea necesario, se deberá proceder por la vía judicial* y cuando el municipio no cuente con los fondos suficientes para contratar los servicios profesionales legales requeridos, referirá los casos al Secretario de Justicia. Cuando la deuda, por su naturaleza o cuantía, o por ambas, afecte los estimados de presupuesto y/o las cuentas programáticas de asignación de fondos para un año fiscal, tal situación deberá informarse al Comisionado. (Énfasis suplido.) Art. 8.003 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4353.

Como vemos, este artículo dispone la facultad del Alcalde para utilizar las medidas que *la ley autorice* para cobrar las deudas del municipio. 21 L.P.R.A. sec. 4353. De esa manera se confiere autoridad para actuar y cobrar las deudas municipales. Por su parte, la Ley Núm. 80 de 1980 dispone el curso de acción que se ha de seguir en el cobro de dichas deudas. Por consiguiente, aunque estamos ante dos

disposiciones que regulan la misma materia —el cobro de deudas— cada una se refiere a un asunto distinto. De éstas no se desprende ninguna incompatibilidad entre sí. Debemos recordar que las leyes que tratan la misma materia deben armonizarse en todo lo posible; la derogación tácita no se favorece. *Cintrón Santana v. Betancourt Lebrón*, 131 D.P.R. 1 (1982).

Aunque la ley expresa que la vía judicial está disponible para el cobro de deudas por los municipios, *en los casos que sea necesario*, ello no implica que la vía judicial es la única forma de garantizar el cobro efectivo de las deudas de un municipio o que de otra manera no se estaría protegiendo la autonomía municipal. La autonomía administrativa que la Ley de Municipios Autónomos proclama no es obstáculo para que los municipios acudan a la Comisión para Resolver Controversias Interagenciales como parte de las gestiones necesarias para cobrar sus deudas antes de acudir a la vía judicial. Máxime cuando el trámite administrativo ofrece mayor agilidad procesal y minimiza la inversión de recursos económicos. Ello contribuye, a su vez, con el cumplimiento del propósito de la Ley Núm. 80 de 1980 de disponer un proceso que agilice la adjudicación de pagos y deudas entre las agencias concernidas en protección precisamente de su autonomía fiscal. Este factor también armoniza perfectamente con el fin primordial de la Ley de Municipios Autónomos de proveer independencia fiscal y administrativa a los municipios.[9]

No existe incompatibilidad entre las referidas leyes. La Ley Núm. 80 de 1980 dispone el procedimiento que se ha

[9] De igual forma, la disponibilidad de foros administrativos para atender controversias que involucren a la administración municipal no implica de ninguna manera un menoscabo a la independencia que la Ley de Municipios Autónomos reconoce a los municipios para administrar sus recursos. La misma ley dispone la aplicación a los municipios de remedios administrativos provistos en otras leyes, como por ejemplo, apelaciones a la Junta de Apelaciones del Sistema de Administración de Personal y la revisión administrativa de la determinación de la Junta de Planificación de anular la aprobación de un proyecto por el municipio. Arts. 12.027 y 13.016 de la Ley de Municipios Autónomos, 21 L.P.R.A. secs. 4577 y 4614.

de seguir para cobrar una deuda municipal en un caso determinado, cuando el deudor es una agencia según se define en dicha ley. Por su parte, la Ley de Municipios Autónomos le suple autoridad a la administración municipal para acudir a cualquier foro, incluso el administrativo, o el judicial, cuando sea necesario. El foro administrativo también es un mecanismo efectivo para proteger los intereses que promueve la Ley de Municipios Autónomos, con el beneficio adicional de ser un foro más ágil y económico.

Atendido este asunto, veamos la jurisdicción de la Comisión para resolver controversias como la de autos.

## III

La doctrina de jurisdicción primaria aplica cuando hay que determinar cuál foro adjudicativo debe hacer una determinación inicial del asunto en controversia. En otras palabras, se refiere a si la acción debe ser presentada inicialmente ante la agencia o ante el tribunal. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, Bogotá, Ed. Forum, 2001, pág. 433. Esta norma responde a la deferencia que merecen las agencias, las cuales están mejor preparadas que los tribunales debido a su especialización y al conocimiento obtenido a través del tiempo en el ámbito en que se desempeñan. Íd., págs. 434–435.

La referida doctrina de jurisdicción primaria tiene dos vertientes: (1) la jurisdicción primaria exclusiva o estatutaria, y (2) la jurisdicción primaria concurrente o "verdadera jurisdicción primaria". La aplicación de la doctrina de jurisdicción primaria concurrente no implica que el ejercicio de jurisdicción del tribunal ha sido eliminado, sino meramente aplazado o "pospuesto". La doctrina simplemente atiende "una cuestión de prioridad de jurisdicción". *E.L.A. v. 12,974.78 Metros Cuadrados*, 90 D.P.R. 506, 511 (1964). A pesar de que una agencia con

jurisdicción primaria concurrente no excluye la jurisdicción del tribunal en el mismo asunto, la aplicación de la referida doctrina tiene el efecto de concederle primacía a la intervención de la agencia administrativa en primera instancia. *Ortiz v. Panel F.E.I.*, supra.

■ De otra parte, la vertiente de jurisdicción primaria exclusiva aplica cuando la ley habilitadora de la agencia dispone expresamente que es la agencia quien tiene facultad para resolver la controversia en primera instancia. *Rivera Ortiz v. Mun. de Guaynabo*, 141 D.P.R. 257 (1996); *Rovira Palés v. P.R. Telephone Co.*, 96 D.P.R. 47 (1968). Se trata de situaciones en que no aplica la doctrina de jurisdicción primaria, debido a que la propia ley rechaza la jurisdicción concurrente entre la agencia y el tribunal. (Véanse los casos citados anteriormente.) En ese caso, como norma general, el foro judicial carece de jurisdicción para dilucidar la controversia entre las partes si no se ha acudido previamente al foro administrativo.

En el caso de autos, es evidente que no existe jurisdicción primaria exclusiva, pues el legislador no lo dispuso así en el texto de la ley. *Rovira Palés v. P.R. Telephone Co.*, supra. No obstante, del texto de la Ley Núm. 80 de 1980 y de la preocupación que motivó al legislador a aprobarla, surge que la Comisión para Resolver Controversias Interagenciales sí posee "verdadera jurisdicción primaria" en el asunto específico que le fue encomendado atender.

Como explicáramos, el propósito de la creación de la Comisión fue proveer un mecanismo administrativo que resuelva de manera rápida y económica las controversias sobre deudas y pagos entre agencias gubernamentales. Se buscó aprovechar la flexibilidad y agilidad de los procedimientos administrativos y evitar un extenso trámite judicial. Ahí reside la importancia del personal especializado de las respectivas agencias que dirigen los miembros de la Comisión al disponerse que se nombrarían de entre sus empleados el "personal técnico, especializado y capaci-

tado para entender en este tipo de controversia". Exposición de Motivos de la Ley Núm. 80 de 1980, *supra*. Se dispuso que se designarían de entre estas agencias los examinadores y auditores necesarios para realizar de la manera más eficiente los propósitos de la ley. Art. 2 de la Ley Núm. 80 de 1980, *supra*.

Más aún, el entendimiento oficial de la jurisdicción de la Comisión es que controversias como éstas deben ser sometidas a la Comisión por ser el "organismo administrativo especializado, creado expresamente por ley con *jurisdicción primaria* para investigar y resolver estos casos en específico". (Énfasis suplido.) Op. Sec. Just. Núm. 1985–19.

▮ De la discusión anterior surge la intención del legislador de proveer un foro especial para atender inicialmente las controversias sobre pagos y deudas entre agencias gubernamentales con prelación al foro judicial, con el fin de proveer los beneficios de especialización y agilidad del trámite administrativo en estos casos.[10] Por consiguiente, en el presente caso, el Municipio de Arecibo debió acudir en primer lugar a la Comisión para Resolver Controversias Interagenciales para reclamar lo adeudado por el Municipio de Quebradillas.

▮ De no estar conforme con la decisión que en su día emita la Comisión, cualquier parte puede acudir al Tribunal de Apelaciones en solicitud de revisión judicial conforme lo dispone la Sec. 4.1 de la L.P.A.U., 3 L.P.R.A. sec. 2171. Ello es así, pues cuando se aprobó la L.P.A.U., sus preceptos pertinentes a la revisión judicial se hicieron extensivos a todas las agencias cubiertas por el estatuto, incluida la Comisión para Resolver Controversias

---

[10] Nótese, además, que de resolverse que los municipios no tienen que acudir inicialmente a la Comisión para Resolver Controversias Interagenciales, la Ley Núm. 80 de 1980 quedaría prácticamente sin vigencia alguna. De esa manera se desperdiciaría un proceso valioso para cobrar deudas interagenciales que busca evitar largos litigios en beneficio de las operaciones y liquidez de las agencias a las que aplica.

Interagenciales. Reiteradamente hemos resuelto que las disposiciones de la L.P.A.U. prevalecen sobre cualquier disposición legal de una agencia aun cuando ésta se haya aprobado antes que aquéllas. *Hernández v. Golden Tower Dev. Corp.*, 125 D.P.R. 144 (1990). Véanse, además: *Asoc. Dueños Casas Parguera, Inc. v. J.P.*, 148 D.P.R. 307 (1999); *Carabarín et al. v. A.R.P.E.*, 132 D.P.R. 938 (1993); *Asoc. Fcias. Com. v. Depto. de Salud*, 156 D.P.R. 105 (2002).[11] En el presente caso, la exclusión de la revisión judicial contenida en la Ley Núm. 80 de 1980 no prevalecería en vista de que fue aprobada con anterioridad al capítulo sobre revisión judicial de la L.P.A.U.[12] Véase 3 L.P.R.A. sec. 2171.

## IV

A la luz de todo lo anterior, *se reconsidera nuestra opinión en Mun. Arecibo v. Mun. Quebradillas*, supra. *En su lugar, confirmamos la decisión del Tribunal de Apelaciones y desestimamos la reclamación del Municipio de Arecibo contra el Municipio de Quebradillas en el caso de autos.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente. El Juez Asociado Señor Corrada Del Río disintió por entender correcta la entonces opinión mayoritaria de este Tribunal en el caso *Mun. Arecibo v. Mun. Quebradillas*, 161 D.P.R. 109 (2004).

---

[11] En particular, en *Aponte v. Policía de P.R.*, 142 D.P.R. 75 (1996), dejamos sin efecto toda disposición en la ley habilitadora de cualquier agencia que disponga la moción de reconsideración como requisito jurisdiccional para la revisión judicial, si ésta fue aprobada previo a la enmienda de 1995 a la L.P.A.U., en la que se dispuso lo contrario.

[12] Reconocemos la situación delicada que puede surgir debido a que en ciertos casos la Comisión, compuesta por miembros del Gabinete de la Rama Ejecutiva, podría adjudicar controversias entre una agencia dirigida por el mismo Ejecutivo y un municipio administrado por un alcalde del partido político contrario. No obstante, esa es una situación que debe ser atendida por la Asamblea Legislativa. En todo caso, los tribunales estarían disponibles para revisar la determinación administrativa en estos casos a la luz de las disposiciones de la L.P.A.U. sobre revisión judicial.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

En el caso de autos, una *nueva* mayoría del Tribunal decide dejar sin efecto y reconsiderar un dictamen previo de este mismo Tribunal, que había sido emitido *mediante opinión y publicado* hace varios meses atrás en *Mun. Arecibo v. Mun. Quebradillas*, 161 D.P.R. 109 (2004).

La nueva decisión ha sido posible por la inusitada intervención, ahora en una moción de reconsideración, de Jueces de este Foro que no participaron anteriormente en el extenso examen que habíamos hecho antes de este asunto, incluso la de uno de ellos que no era miembro del Tribunal entonces.

El inusitado proceder de esta nueva mayoría es particularmente sorprendente porque se trata de la reconsideración de una ponderada decisión previa de este Tribunal, *que ya había sido publicada* cuando la nueva mayoría optó por reconsiderarla. Dicho proceder es contrario a la práctica acostumbrada de este Tribunal y menoscaba la confiabilidad que deben tener las decisiones del Tribunal Supremo.

Como se sabe, el Tribunal Supremo de Puerto Rico tiene una función preeminente en el sistema democrático de gobierno que rige en el país, que es la de interpretar con finalidad la Constitución y las leyes de nuestro ordenamiento jurídico. *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576 (1983); *Santa Aponte v. Ferré Aguayo*, 105 D.P.R. 670 (1977). Lo que este Foro determina sobre el alcance y significado de cualquier norma jurídica de nuestra propia jurisdicción es inapelable y obligatorio. Por ello, hemos resuelto que *"las [o]piniones de este Tribunal son 'ley' en esta jurisdicción al igual que las aprobadas por la Asamblea Legislativa"*. *Almodóvar v. Méndez Román*, 125 D.P.R. 218, 248 esc. 13 (1990). Por eso *se publican nuestras*

*opiniones*, que sirven de *precedentes* para los casos que tienen ante sí los foros *a quo*, tanto judiciales como administrativos. *Rivera Maldonado v. E.L.A.*, 119 D.P.R. 74 (1987). Por eso también hemos indicado que las personas en el país pueden depender de nuestra jurisprudencia para guiar su conducta. *Peña v. Federación de Esgrima de P.R.*, 108 D.P.R. 147 (1978). Por ello, asimismo nuestras decisiones son objeto de intenso estudio y crítica por los miembros de la profesión jurídica, particularmente por los profesores de Derecho y sus estudiantes.

Conforme a lo señalado antes, una vez publicamos una opinión sobre algún asunto jurídico, de ordinario ésta vincula aun a nosotros mismos en casos futuros. Por ello, hemos resuelto que nuestras ponderadas opiniones, *una vez publicadas*, no deben ser variadas, *"a menos que sea[n] tan manifiestamente errónea[s] que no pueda[n] sostenerse sin violentar la razón y la justicia"*. *Capestany v. Capestany*, 66 D.P.R. 764, 767 (1946). Véanse: *San Miguel, Etc. & Cía. v. Guevara*, 64 D.P.R. 966 (1945); *Banco de Ponce v. Iriarte*, 60 D.P.R. 72 (1942); *García Fernández, Ex Parte*, 44 D.P.R. 296 (1932). En efecto, precisamente porque nuestras opiniones son parte integrante del ordenamiento jurídico, *una vez las publicamos* es esencial que éstas sean duraderas y definitivas de ordinario. *Si nuestras interpretaciones de las normas jurídicas estuviesen sujetas a cambios corrientes, nadie sabría a qué atenerse; no serían confiables; jueces, administradores, abogados y hasta el público en general no tendrían seguridad alguna sobre numerosos aspectos de la convivencia social.* El caos resultante atentaría contra la fe en la justicia que consagra el preámbulo de nuestra Constitución.

*Nada de lo anterior significa que nuestras decisiones no sean susceptibles de reconsideración.* Nuestro propio Reglamento dispone los términos para la expedita reconsideración de nuestros dictámenes. Pero éstos de ordinario no deben salir a la luz pública mientras están sujetos a recon-

sideración porque una vez *son publicados como opiniones*, vienen a formar parte integral del ordenamiento jurídico y no deben estar sujetos a vaivenes, como ha sucedido en el caso de autos.

Estas consideraciones sobre la indispensable permanencia de nuestras decisiones *una vez las publicamos* nos lleva necesariamente a preguntarnos *qué razones de índole pública existen para que una nueva mayoría del Tribunal opte ahora por apartarse de la práctica acostumbrada y decida revocar una opinión publicada por este mismo Tribunal, hace tan sólo unos meses.*

No puede negarse, claro está, que el asunto del caso de autos puede ser susceptible de más de una solución. Sin embargo, la que este Tribunal publicó deliberadamente hace unos meses atrás en este mismo caso *no es tan manifiestamente errónea que violente la razón y la justicia.* Ciertamente no se trata de una opinión *tan insostenible y sobre un asunto de tal importancia* que justifique que una nueva mayoría decida hacer caso omiso de las fundamentales consideraciones de estabilidad y de confiabilidad del Derecho que informan nuestra acostumbrada práctica de sostener y mantener vigentes las opiniones que hemos publicado.

Yo particularmente voy aún más lejos. Nuestra decisión anterior es indudablemente *más apropiada* que la de la nueva mayoría en el caso de autos. El nuevo dictamen del Tribunal ahora requiere realizar un malabarismo jurídico para poder resolver, como se resuelve aquí, que las decisiones de la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales en casos como el de autos son revisables por el Tribunal de Apelaciones. Ello, porque la propia ley que creó dicha Comisión expresamente dispone en su Art. 3 (3 L.P.R.A. sec. 1753), que las determinaciones de dicha Comisión serán *finales y firmes, y que no se apelarán ante ningún organismo judicial.* El dictamen ahora de la nueva mayoría del Tribunal requiere hacer caso

omiso y desacatar este claro mandato legislativo, dispuesto precisamente en el propio estatuto que la nueva mayoría del Tribunal pretende aplicar.

El dictamen ahora de la nueva mayoría del Tribunal requiere asimismo hacer caso omiso y abandonar aquí un fundamental principio de nuestro ordenamiento jurídico, establecido en numerosas opiniones previas de este Foro, conforme al cual para privar a los tribunales de instancia de Puerto Rico de su autoridad para conocer originalmente de algún asunto particular, es necesario que el legislador lo haya dispuesto expresamente así. Nada cita la nueva mayoría en su opinión aquí que demuestre que el legislador tuvo la intención de excluir tajantemente de la jurisdicción general de los tribunales de instancia del país el asunto del caso de autos. El nuevo dictamen, pues, constituye un tercer dislate de parte de la nueva mayoría del Tribunal, sin que se haya justificado a qué intereses de orden público responde tal proceder. *Queda por explicarse porqué razones de preponderante importancia se quiera revocar a toda costa nuestra ponderada decisión anterior, que ya había sido publicada.*

Lo más desconcertante del dictamen mayoritario que aquí nos concierne, sin embargo, no son los tres serios errores que hemos identificado antes, sino el dislate adicional de que la nueva opinión de la nueva mayoría no atiende de modo satisfactorio la importante consideración de orden público que tuvimos muy en cuenta en nuestra decisión anterior. Se trata de una cuestión relativa a la *objetividad y la buena reputación* que deben tener los procesos públicos en un país tan politizado como el nuestro. Se trata de una consideración que parte del hecho de que la Comisión que aquí nos concierne está integrada únicamente por tres miembros del Gabinete de Gobernador, que son personas de su íntima confianza. Conviene citar esencialmente lo que señalamos entonces, *que no parece preocuparle a la nueva mayoría ahora:*

Nótese que si un municipio estuviese *obligado* siempre a dilucidar casos como el de autos ante una comisión como la que aquí nos concierne ... existiría el claro riesgo de que los municipios cuyos alcaldes pertenezcan a un partido distinto al del Primer Ejecutivo no reciban un trato justo u objetivo de parte de la Comisión. La entidad aludida es sólo un brazo del Primer Ejecutivo, que muy bien puede resolver disputas entre agencias gubernamentales que de cualquier forma están sujetas a las decisiones del Primer Ejecutivo. Pero cuando se trata de municipios, cuyos alcaldes son de partidos distintos al del Primer Ejecutivo —cosa que sucede con frecuencia en el país— siempre existe el riesgo de que prevalezcan los intereses partidistas de éste, a costa de lo que le convenga al municipio reclamante. Los tribunales son, sin lugar a dudas, el foro más idóneo para que tal municipio reclamante pueda dilucidar su reclamo con mayor garantía de objetividad. *Mun. Arecibo v. Mun. Quebradillas*, supra, pág. 118.

La nueva mayoría del Tribunal dedica copiosas disquisiciones a discutir si la Comisión es o no una "agencia", en un claro despliegue de puro conceptualismo jurídico, a la vez que ignora el problema real que existe en el fondo del asunto que aquí nos concierne, que es sobre la objetividad y la confiabilidad que deben tener nuestros procesos públicos.

No parece preocuparle a la nueva mayoría *la clara ausencia de un juzgador neutral* que ocurre cuando un alcalde, que no forma parte de la Rama Ejecutiva y que pertenece a un partido distinto al del Gobernador, tiene que someter una reclamación suya al arbitrio de tres íntimos subalternos del Gobernador; esquema que en el caso de los municipios da al traste con las más elementales nociones del juzgador imparcial y, por ende, del debido proceso de ley.

Esta nueva decisión no responde a los más altos intereses que tenemos encomendados y sólo puede resultar en un innecesario descrédito de la imagen de este Tribunal. Por todo ello, disiento.