ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| PUERTO RICO AGGREGATE COMPANY, INC.<br><br>Recurrido<br><br>v.<br><br>AGGREGATE, INC.<br><br>Peticionario | KLCE202500201 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm. SJ2024CV10748<br><br>Sobre:<br>Injunction Preliminar y Permanente |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de marzo de 2025.

I.

El 31 de agosto de 2017, AGGI, Puerto Rico Aggregate Company, Inc. (PRACI), Xavier Zequeira, Inc. (XZINC), y la Sucesión de Xavier Zequeira Blanco (Sucesión Zequeira), otorgaron Contrato de Arrendamiento de Fincas Rústicas para Extracción y Proceso de Material Rocoso. En virtud de dicho acuerdo, PRACI arrendó a AGGI las fincas conocidas como las Fincas Urrutia, y XZINC y la Sucesión Zequeira arrendaron otras dos fincas. En el referido Contrato de Arrendamiento, PRACI, XZINC, y la Sucesión Zequeira le confirieron a AGGI el derecho de uso exclusivo de estas fincas para operar una cantera y sus facilidades

Así las cosas, el 30 de abril de 2024, la empresa Puerto Rico Asphalt LLC -entidad sucesoral afiliada de Betterroads Asphalt LLC-, propiedad de los señores Jorge Luis Díaz Irizarry y Jorge Arturo Díaz Mayoral, adquirieron las acciones de PRACI. Tras suscitarse alegados actos de perturbación de su posesión por parte de Puerto Rico Asphalt

Número Identificador

SEN2025_____

LLC, AGGI instó acción de Interdicto Posesorio ante el Tribunal de Primera Instancia, Sala Superior de Carolina.

Mientras se dilucidaba dicho pleito, el 21 de noviembre de 2024 PRACI presentó *Demanda Jurada* en solicitud de injunction preliminar y permanente contra AGGI. Alegó, en esencia, que, AGGI extrae y almacena material en exceso del nivel autorizado bajo el *Permiso Formal para Extracción de Materiales de la Corteza Terrestre* en la Finca Urrutia, y el *Permiso General para otras Obras* en la Finca Urrutia, en contravención a la *Ley de Arena, Grava y Piedra*, Núm. 132 de 25 de junio de 1968, y la *Ley Sobre Política Pública Ambiental*, Núm. 416-2004, según enmendada. Pidió, que se le ordenara a AGGI cesar el uso de los permisos, que, según alegó, PRACI dejó sin efecto tras cancelársele el Contrato.

Mediante Orden y Citación de 27 de noviembre de 2024, el Foro de primera instancia señaló vista para dilucidar si se concede o no el remedio de injunction preliminar. No obstante, AGGI presentó *Moción de Desestimación.* Por su parte, el 14 de enero de 2025, PRACI presentó una *Oposición a Moción de Desestimación.* El 24 de febrero de 2025, el Foro *a quo* dictó *Resolución* declarando Sin Lugar la *Moción de Desestimación* de AGGI y señaló vista de injunction preliminar para el 6 de marzo de 2025.

Insatisfecho, el 28 de febrero de 2025, AGGI recurrió ante nos mediante recurso de *Certiorari*. Plantea, que "erró el TPI al denegar la moción de desestimación presentada por AGGI." Acompañó su recurso con *Urgente Moción en Auxilio de Jurisdicción.* Ese mismo día paralizamos los procedimientos en el Tribunal recurrido y concedimos a PRACI, hasta el martes 4 de marzo de 2025, para que se expresara sobre los méritos del recurso. Así lo hizo el 4 de marzo mediante *Reconsideración del Auxilio de Jurisdicción y Alegato en Oposición a Solicitud de Certiorari.* Con el beneficio de las aludidas comparecencias, procedemos a resolver.

II.

Entre los múltiples fundamentos esgrimidos por AGGI en su fallida *Solicitud de Desestimación* del pleito de Injunction, sostiene, que el foro con jurisdicción primaria exclusiva para entender en el caso es el Departamento de Recursos Naturales y Ambientales (DRNA). En la alternativa expone, que, de haber jurisdicción concurrente entre el DRNA y el Tribunal de Primera Instancia, este último debía abstenerse de intervenir en la controversia por ser el DRNA la agencia con la destreza o pericia que, por disposición expresa de ley, debe adjudicar las violaciones alegadas y determinar los supuestos de daños ambientales alegados. Veamos.

A.

Como parte de las normas de autolimitación judicial reconocidas en nuestro ordenamiento,[1] la doctrina de jurisdicción primaria atiende cuáles, de los foros, -el administrativo o el judicial-, posee la facultad inicial de adjudicar y entender en el asunto.[2] Ésta versa sobre qué organismo debe efectuar una evaluación y adjudicación inicial de una controversia, partiendo de la premisa de que se requiere el ejercicio de la discreción o el conocimiento especializado que posee una agencia administrativa. El fundamento principal de la jurisdicción primaria es que las agencias se consideran mejores preparadas que los tribunales debido a su especialización y el conocimiento que han obtenido a través de su experiencia en la interpretación de su ley habilitadora.[3] Por ello, la doctrina de la jurisdicción primaria excluye la intervención judicial en pro de la adjudicación por un ente administrativo especializado.[4] En tales

---

[1] *Colón Rivera et al.* v. *ELA,* 189 DPR 1033, 1057 (2013).
[2] *Beltrán Cintrón* v. ELA, 204 DPR 89, 102-08 (2020).
[3] D. Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, Colombia, Editorial Forum, 3ra ed., 2013, pág. 566; *Asoc. Pesc. Pta. Figueras* v. *Pto. Del Rey*, 155 DPR 906, 920 (2001).
[4] Íd.

casos, la reclamación debe considerarse inicialmente por el foro administrativo correspondiente.[5]

Esta doctrina tiene dos vertientes, a saber, jurisdicción primaria **exclusiva** y jurisdicción primaria **concurrente**.[6] Según el Tribunal Supremo "la jurisdicción primaria aplica verdaderamente cuando hay jurisdicción concurrente entre el foro administrativo y el judicial".[7] Presupone, que, tanto el foro judicial como el administrativo, tienen jurisdicción para entender la controversia planteada, pero se cede la primacía a la agencia por su especialización y conocimiento sobre el asunto objeto de la reclamación. Los jueces deben aplicar la doctrina de la jurisdicción primaria en casos en los cuales el peritaje de la agencia es indispensable para resolver la controversia. Esto es así porque los tribunales de justicia no son centros académicos para dirimir sutilezas técnicas.[8] Se justifica la desviación del cauce administrativo vía excepción; por ejemplo, cuando ha habido un agravio de patente intensidad al derecho de un individuo que requiere urgente reparación o ha ocurrido una violación de derechos fundamentales.[9]

La segunda vertiente de la doctrina -la exclusiva-, está presente cuando la propia ley establece que el foro administrativo tendrá jurisdicción inicial exclusiva para entender en la reclamación.[10] Esta doctrina atiende situaciones en las que no aplica la doctrina de jurisdicción primaria concurrente, debido a que la ley misma aclara que esta última no existe. En casos de jurisdicción primaria **exclusiva**, la propia ley orgánica

---

[5] *Asoc. Pesc. Pta. Figueras* v. *Pto del Rey*, supra, pág. 916; *Vega* v. *J. Pérez y Cía, Inc.*, 135 DPR 746, 758 (1994); *Vélez Ramírez* v. *Romero Barceló*, 112 DPR 716, 722 (1982).
[6] *Municipio Arecibo* v. *Municipio Quebradillas*, 163 DPR 308, 326 (2004).
[7] *Beltrán Cintrón* v. *ELA*, supra, pág. 103.
[8] *Quiñones* v. *ACAA*, 102 DPR 746, 749-750 (1974); *Báez Rodríguez et al.* v. *ELA*, 179 DPR 231, 240 (2010); *Ortiz* v. *Panel F.E.I.* 155 DPR 219, 244 (2001).
[9] *Otero Martínez* v. *Gobernador*, 106 DPR 552, 556 (1977).
[10] Supra, pág. 102-103.

expresamente reserva al organismo administrativo el poder para resolver un determinado asunto en primera instancia, quedando el foro judicial sin facultad para intervenir inicialmente en el asunto.[11] En tales casos, la ley no tiene que expresamente utilizar el término jurisdicción exclusiva, pues no se trata de un requisito *sine qua non,* sino que basta que de la ley surja el carácter exclusivo de la jurisdicción.[12] Se trata, pues, de un mandato legislativo -y no de una norma de índole jurisprudencial-, a través del cual se establece que el ente administrativo tendrá jurisdicción sobre determinado tipo de asuntos, por lo que en esos casos los tribunales no cuentan con autoridad para atender las reclamaciones en primera instancia.[13]

En ocasiones, la jurisdicción **exclusiva** no necesariamente surge clara y precisa del estatuto. Por tanto, para resolver la cuestión jurisdiccional, es necesario examinar la legislación implicada y si ésta define el foro con jurisdicción exclusiva, en cuyo caso se suspende o dilata la intervención judicial.[14]

En el contexto del recurso extraordinario de injunction, *CBS Outdoor* v. *Billboard One,* 179 DPR 391 (2010), dispuso que, ausente disposición legal expresa que confiera jurisdicción exclusiva a una agencia administrativa para emitir órdenes de injunction, los tribunales de justicia tienen jurisdicción concurrente para atender este tipo de solicitudes. La competencia primaria de las agencias sobre ciertos asuntos no elimina automáticamente la facultad de los tribunales para intervenir cuando los derechos de una parte están en peligro de sufrir daños irreparables o cuando el remedio administrativo no es adecuado ni suficiente.[15]

---

[11] Supra, pág. 327.
[12] *Rivera Ortiz* v. *Mun. de Guaynabo,* 141 DPR 257, 271 (1996).
[13] *Beltrán Cintrón* v. *ELA,* supra, págs. 103-104.
[14] Supra.
[15] *CBS Outdoor* v. *Billboard One,* supra.

B.

En este caso, no hemos encontrado ley o reglamento que confiera jurisdicción primaria exclusiva al DRNA para atender controversias relacionadas al uso de permisos ambientales ni para conceder el remedio de injunction. Ciertamente, el DRNA tiene competencias administrativas relacionadas con la supervisión, fiscalización y sanción en relación con los permisos ambientales, sin embargo, conforme a *CBS Outdoor* v. *Billboard One*, supra, ello no priva automáticamente a los tribunales de su autoridad para intervenir en casos jurídicamente apropiados. Ello tampoco quiere decir, que es automática o mecánica la intervención judicial. Deberá el Foro *a quo,* sopesar con cautela y rigor, si es conveniente y necesario atender y adjudicar la controversia, luego de concluir que no es necesario el conocimiento experto de la agencia para alcanzar una adecuada resolución del pleito.

III.

Arguye AGGI, que en la *Demanda Jurada* cuya desestimación solicita, PRACI reclama un daño hipotético basado en puras inferencias y especulaciones, y en unos supuestos "daños ambientales" que no ha identificado y mucho menos ha establecido cómo le afectan. Para AGGI, PRACI no cumplió con el requisito de demostrar una lesión propia y particularizada, según requerido por el Tribunal Supremo en *Fund. Rider y otros* v. ARPE, 178 DPR 563, 573 (2010). No tiene razón.

A.

La pretendida desestimación de AGGI encuentra obstáculo en la Regla 10.2 de Procedimiento Civil,[16] y la interpretación que de esta ha hecho nuestro Tribunal Supremo. Según la norma, bajo esta Regla, un demandado puede solicitar al tribunal la desestimación

---

[16] 32 LPRA Ap. V, R. 10.2.

de la demanda presentada en su contra, fundándose en: 1) falta de jurisdicción sobre la materia o la persona; 2) insuficiencia del emplazamiento o de su diligenciamiento; 3) dejar de exponer una reclamación que justifique la concesión de un remedio; y 4) dejar de acumular una parte indispensable.[17]

Al evaluar una moción de desestimación bajo el inciso (5) de esta regla, esto es, dejar de exponer una reclamación que justifique la concesión de un remedio, el tribunal debe tomar "como ciertos todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas".[18] En este ejercicio, el tribunal debe interpretar las alegaciones "conjuntamente, liberalmente y de la manera más favorable para la parte demandante".[19] Solo procede la desestimación si la parte demandada demuestra que el demandante no tiene derecho a la concesión de remedio alguno, irrespectivamente de los hechos que en su día pueda probar en apoyo a su reclamación.[20]

El tribunal deberá identificar los elementos que establecen la causa de acción y las meras alegaciones concluyentes que no pueden presumirse como ciertas.[21] Nuestro Tribunal Supremo ha reiterado que la desestimación de una demanda es un remedio drástico y draconiano que solo procede si se demuestra de manera certera que el demandante no tiene derecho a remedio alguno bajo ningún estado de derecho, aun interpretando la demanda de la manera más liberal en su favor.[22] El propósito que persigue una

---

[17] *Colón Rivera, et al.,* v. *ELA*, 189 DPR 1033, 1049 (2013); *González* v. *Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).

[18] *Colón* v. *Lotería de Puerto Rico,* 167 DPR 625, 649 (2006); *Roldán Rosario* v. *Lutrón, S.M., Inc.*, 151 DPR 883, 890 (2000).

[19] *Ortiz Matías et al.* v. *Mora Development,* 187 DPR 649, 654 (2013); *Sánchez* v. *Aut. de los Puertos, supra*, pág. 570.

[20] *Autoridad de Tierras* v. *Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008); *Dorante* v. *Wrangler de P.R.*, 145 DPR 408, 414 (1998).

[21] Hernández Colón R., Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, 6ta Ed., sec. 2604, pág. 307 (2017).

[22] *Ortiz Matías* v. *Mora Development,* supra, pág. 654.

moción al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, no es poner en duda los hechos alegados en la demanda, sino que atacarla por un vicio intrínseco en la misma.[23] El peso de demostrar dicha certeza recae exclusivamente sobre la parte promovente de la solicitud de desestimación.[24]

B.

En el caso ante nos, al evaluar las alegaciones contenidas en la *Demanda Jurada* de la forma más favorable hacia la parte demandante conforme requiere la Regla 10.2 de Procedimiento Civil, *supra*, coincidimos con el dictamen recurrido en que no procedía la desestimación de la reclamación. Las alegaciones de PRACI son suficientes, bajo el crisol de la mencionada Regla 10.2, para concluir, en términos generales, que los recurridos tienen una causa de acción en contra de AGGI. El demandante PRACI como titular de los permisos, alega que AGGI ha incumplido con ellos y, que dicho incumplimiento lo expone a sufrir un daño irreparable, incluyendo daños ambientales. Ante estas alegaciones bien hechas, no podía el Tribunal de Primera Instancia desentenderse de su deber de evaluar en sus méritos la controversia en aras de proteger el ambiente y prevenir daños irreparables. Ello, luego de concluir, claro está, que no es necesaria la intervención inicial y prioritaria de la agencia con la pericia necesaria.

Como parte de sus argumentos, AGGI sostiene que PRACI reclama un daño hipotético basado en puras inferencias y especulaciones, y en unos supuestos "daños ambientales" que no ha identificado, mucho menos establecido cómo le afectan". Reiteramos, que, tomando como buenas las alegaciones bien hechas en la *Demanda Jurada*, lo conveniente y jurídicamente correcto es

---

[23] J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da. ed., Publicaciones JTS, 2011, T. II, pág. 536.
[24] *Rivera Sanfeliz et al.* v. *Ita. Dir. First Bank*, 193 DPR 38 49 (2015); *Ortiz Matías* v. *Mora Development*, supra.

dar paso a que, en la vista en su fondo, la demandante PRACI pruebe sus alegaciones y no que sean descartadas a destiempo desestimando su reclamo. La política judicial claramente favorece la adjudicación de los casos en sus méritos, evitando resoluciones prematuras que nieguen el acceso a la justicia sobre la base de formalismos procesales.[25]

IV.

AGGI también arguye, que faltan partes indispensables. Se refiere a XZINC y la Sucesión Zequeira, quienes obtienen unos beneficios como resultado de la actividad de extracción. Veamos.

Parte indispensable es "aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos."[26] Una parte se convierte en indispensable "cuando la controversia no puede adjudicarse sin su presencia ya que sus derechos se verían afectados". Por esa razón, si no está presente en el litigio se transgrede el debido proceso de ley del ausente."[27]

En este caso, ni XZINC ni la Sucesión Zequeira tienen relación directa ni utilizan el permiso ambiental objeto de la controversia. Según las alegaciones de la *Demanda Jurada,* los Zequeira no están involucrados en el uso *del Permiso Formal para la Extracción de Materiales de la Corteza Terrestre* ni del *Permiso General para otras Obras.* La controversia ante el Tribunal recurrida, gira precisamente, en torno al uso indebido de los permisos ambientales relacionados con la extracción de material de corteza terrestre en las Fincas Urrutia, lugar distinto a las fincas en posesión de los Zequeira. Ello elimina cualquier interés que puedan

---

[25] *Ortiz* v. *PR Telephone,* 162 DPR 715, 723 (2004).
[26] *García Colón* v. *Sucn. González,* 178 DPR 527, 548 (2010). Véase, además: Regla 16.1 de las de Procedimiento Civil, 32 LPRA Ap. V. R. 16.1.
[27] *Rivera Marrero* v. *Santiago Martínez,* 203 DPR 462, 479 (2019).

tener los Zequeira en la extracción del material en las Fincas Urrutia, objeto de litigio. Ahora bien, si de forma colateral se incide en su relación contractual, nada impide que los Zequeira incoen un pleito independiente en reclamo de cualquier derecho que le sea afectado.

En conclusión, actuó conforme a derecho el Tribunal de Primera Instancia al negarse a desestimar la *Demanda Jurada* a tenor con la Regla 10.2 de Procedimiento Civil. Esta conclusión no significa, que, en su correcta evaluación de la prueba, el Foro *a quo* determine si debe, en primera instancia, el DRNA atender y adjudicar el pleito.

V.

Por los fundamentos expresados, se *expide* el auto de *Certiorari* solicitado y se *confirma* la *Resolución* recurrida en cuanto denegó la desestimación de la *Demanda Jurada* a tenor con la Regla 10.2 de Procedimiento Civil.

Por último, se deja sin efecto la paralización decretada en nuestra *Resolución* de 28 de febrero de 2025 y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos como han sido allí pautados.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones