Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| **MYRNA NEGRÓN LOPEZ**<br><br>Recurrida<br><br>v.<br><br>**MUNICIPIO DE CIDRA**<br><br>Recurrentes | TA2025RA00027 | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Comisión Apelativa del Servicio Público (CASP)<br><br>Caso Núm.<br>**2018-07-0025**<br><br>Sobre: Retención |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 21 de agosto de 2025.

Comparece ante nos, el Municipio de Cidra, en adelante, Mun. Cidra o recurrente, solicitando nuestra revisión sobre una *"Resolución y Orden Parcial"* emitida por la Comisión Apelativa del Servicio Público, en adelante, CASP, notificada el 24 de abril de 2025. En su dictamen, la CASP concluyó que tenía jurisdicción para atender el caso entre la recurrente y Myrna Negrón López, en adelante, Negrón López o recurrida.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

## I.

El 21 de marzo de 2018, la Legislatura Municipal del Mun. Cidra promulgó la Ordenanza Municipal Número 13, serie 2017-2018.[1] Esta fue aprobada por su Alcalde, el Hon. Javier Carrasquillo Cruz, el 23 de marzo de 2018. En la misma, se dispuso cómo se procedería con la cesantía de empleados, en caso de ser necesario.

---

[1] Apéndice del recurso, pág. 30.

Posteriormente, el 4 de abril de 2018, el recurrente emitió el Memorando OA003-2018 mediante el cual activó el plan de cesantía.[2] Entre los empleados cesanteados, se encontraba Negrón López, quien laboró como Coordinadora del Programa Prevención y Ayuda Ocupacional del Municipio de Cidra.[3] Surge del expediente que el 25 de junio de 2025, la recurrida recibió una carta del entonces Alcalde Interino, José Morales Rivera.[4] En la misiva, se le informó que efectivo el 30 de junio de 2025, quedaría cesanteada de su puesto. Además, se le apercibió de su derecho a apelar esta acción ante la CASP.

El 29 de junio de 2018, Negrón López y otros empleados cesanteados presentaron una *"Demanda"* ante el Tribunal de Primera Instancia, Sala Superior de Caguas, en adelante, TPI-Caguas contra el Mun. Cidra.[5] En su petitorio, solicitaron un entredicho provisional, injunction preliminar y permanente y una sentencia declaratoria, para cancelar la implementación del plan de cesantías.

Por su parte, el Mun. Cidra presentó ante el TPI-Caguas una *"Solicitud de Desestimación"* el 5 de julio de 2018.[6] Entre otros asuntos, adujo que el TPI-Caguas carecía de jurisdicción sobre la materia, por tratarse de un asunto de cesantías, sobre el cual la CASP tiene jurisdicción exclusiva.

Así las cosas, el 6 de julio de 2018, se celebró una Vista de Interdicto Preliminar.[7] Luego, el 1 de agosto de 2018, el TPI-Caguas emitió una *"Sentencia"*, en la que desestimó la *"Demanda"* por falta de jurisdicción.[8]

---

[2] *Id.* pág. 31.
[3] *Id.*, pág. 1.
[4] *Id.*, pág. 3.
[5] CG2018CV01091.
[6] SUMAC, Entrada Núm. 9.
[7] SUMAC, Entrada Núm. 16.
[8] SUMAC, Entrada Núm. 17.

Por otro lado, e inconforme con el proceder de su patrono, el 13 de julio de 2018, Negrón López radicó una *"Apelación"* ante la CASP.[9] En su petitorio, adujo que el procedimiento utilizado por la recurrente para su cesantía incumplió con el Reglamento de Personal del Municipio. Además, arguyó que el Mun. Cidra incumplió con la Ley 81-1991, y enmendó una Ordenanza Municipal para poder proceder de manera *ultra vires* con la cesantía. Por ello, solicitó ser restituida a su puesto laboral.

Por su parte, el 17 de septiembre de 2018, el Mun. Cidra presentó una *"Moción Solicitando Desestimación"* ante la CASP.[10] La recurrente sostiene en su escrito que la recurrida presentó su recurso tardíamente. Por otro lado, aduce que los empleados municipales que tuvieran reclamos contra la Ordenanza Municipal en controversia tenían veinte (20) días para acudir al Tribunal de Primera Instancia para cuestionar la validez de esta. Añadió que los reclamos de esta naturaleza no proceden, ya que, en virtud de la Ley de Municipios Autónomos, Ley 81-1991, 21 LPRA ant. sec. 4004, es el foro judicial quien tiene jurisdicción para atender la impugnación de una Ordenanza Municipal. Posteriormente, el 18 de diciembre de 2018, Negrón López presentó ante la CASP una *"Moción en Oposición a Desestimación"*.[11]

Luego de varios años dilucidándose el asunto ante la CASP, incluyendo una Vista Argumentativa el 23 de febrero de 2023 para atender los planteamientos sobre jurisdicción, la controversia mencionada fue finalmente atendida en el año 2025.[12] Por no haberse emitido una determinación durante ese tiempo, Negrón López le solicitó a la agencia que se expresara, de modo que la controversia pudiera ser adjudicada.[13]

---

[9] Apéndice del recurso, pág. 1.
[10] *Id.*, pág, 5.
[11] *Id.*, pág. 19.
[12] *Id.*, pág. 25.
[13] *Id.*

El 14 de febrero de 2025, la CASP les solicitó a las partes que presentaran sus argumentos por escrito en un término de diez (10) días.[14] Así, el 24 de febrero de 2025, la recurrida presentó una *"Moción en Cumplimiento de Orden"*.[15] Sin embargo, el 25 de febrero de 2025, el Mun. Cidra solicitó una prórroga.[16] El 5 de marzo de 2025, la CASP le concedió un término adicional de veinte (20) días a la recurrente. El 17 de marzo de 2025, el Mun. Cidra radicó su *"Moción en Cumplimiento de Orden"*, reiterando sus planteamientos jurisdiccionales.[17]

Finalmente, el 24 de abril de 2025, la CASP emitió una *"Resolución y Orden Parcial"*.[18] En su dictamen, la agencia hizo unas determinaciones de hechos y de derecho, concluyendo que tenía jurisdicción para atender la controversia del caso de autos. Por todo lo cual, ordenó la continuación de los procesos ante sí. Además, apercibió a las partes de su derecho a solicitar una reconsideración y luego un recurso de revisión administrativa ante el Tribunal de Apelaciones.

A consecución, el Mun. Cidra presentó una *"Moción de Reconsideración"* ante la CASP el 14 de mayo de 2025,[19] la cual fue declarada *"No Ha Lugar"* el 27 de mayo de 2025, mediante *"Resolución"*.[20] Posteriormente, el 26 de junio de 2025, el recurrente compareció ante esta Curia mediante *"Recurso de Revisión Judicial"*, haciendo el siguiente planteamiento:

> **Erró CASP al concluir que tiene jurisdicción primaria para atender la solicitud de apelación de epígrafe a pesar de que la misma busca impugnar la validez de una ordenanza municipal.**

---

[14] *Id.*
[15] *Id.*
[16] *Id.* pág. 43.
[17] *Id.*
[18] *Id.* pág. 50.
[19] *Id.* pág. 61.
[20] *Id.*, pág. 69.

El 2 de julio de 2025 emitimos una *"Resolución"* en la que concedimos a la recurrida hasta el 28 de julio de 2025 para presentar su posición en cuanto al recurso, conforme dispone la Regla 63 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 83, 215 DPR ___ (2025). Sin embargo, Negrón López no compareció dentro del término concedido, por lo que procedemos a atender la controversia con el beneficio del expediente que obra en autos.

**II.**

### A. Revisión Administrativa

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Vázquez, Torres v. Consejo Titulares et al.,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances*, 2024 TSPR 64, 213 DPR ___ (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008).

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalqcua v. Quirós, Betances*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias

administrativas. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

La LPAUG, supra, sec. 9675 dispone que, "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 627 (2016). Tanto la referida Ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley, y si la misma es legal y razonable. *Hernández, Álvarez v. Centro Unido,* 168 DPR 592, 616 (2006); *T–JAC* v. *Caguas Centrum*, 148 DPR 70, 80 (1999).

Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1041 (2012).

Nuestro más Alto Foro ha establecido que las evaluaciones de las agencias administrativas sobre los hechos de un caso tienen una ***presunción de regularidad y corrección***, haciendo necesario que aquel que desee impugnar dichas decisiones, presente evidencia suficiente que derrote la misma, y no descanse en meras alegaciones. *Katiria's Café, Inc vs. Mun. San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT*, 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 2024 TSPR 70, 213 DPR___ (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010); *Vélez v. ARPE*, 167 DPR

684, 693 (2006). Conforme lo ha interpretado nuestro Tribunal Supremo, la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia es *arbitraria, ilegal,* o tan *irrazonable* que la misma constituye un abuso de discreción. *Rebollo v. Yiyi Motors*, 161 DPR 69, 76 (2004).

Sin embargo, la deferencia hacia las decisiones administrativas no es automática. Recientemente, en *Vázquez, Torres vs. Consejo Titulares et al.,* supra, nuestro Máximo Foro, analizando la Sección 9675 de la LPAUG, explicó que:

> [l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, *será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.*

> (Énfasis suplido).

Es decir, concluyó que, en virtud de la precitada disposición estatutaria, el legislador eliminó la deferencia judicial sobre las determinaciones de derecho que realicen las agencias administrativas. *Vázquez, Torres v. Consejo Titulares et al.,* supra.

Por otro lado, el Art. 4.006, de la Ley de la Judicatura de 2003, 4 LPRA sec. 24y, establece en su inciso (c) la competencia del Tribunal de Apelaciones. A esos efectos, dispone que este Foro conocerá mediante recurso de revisión judicial, las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. *Simpson, Passalacqua vs. Quirós, Betances,* supra*; AAA v. UIA,* 200 DPR 903, 910-911 (2018); *Depto. Educ. v. Sindicato Puertorriqueño,* supra, pág. 543; *Procuradora Paciente v. MCS,* 163 DPR 21, 33-34 (2004).

Por su parte, la Sección 1.3 de la LPAUG, supra, sec. 9601, define "orden o resolución" como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas, excluyendo órdenes ejecutivas emitidas por el Gobernador". Además, la precitada sección define "orden interlocutoria" como "aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal". *Simpson, Passalacqua vs. Quirós, Betances,* supra.

La Sec. 4.2 de la LPAUG, supra, sec. 9672, también establece que la revisión administrativa ante el Tribunal de Apelaciones se hará respecto a las órdenes o resoluciones finales, luego de que el recurrente haya agotado "todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente".

A pesar de que la LPAUG no define el término "orden o resolución final", esta contiene una descripción de lo que tiene que incluir para ser considerada final. *Simpson, Passalacqua vs. Quirós, Betances,* supra. En su Sección 3.14, supra, sec. 9654, este cuerpo estatutario requiere que se incluyan determinaciones de hecho y las conclusiones de derecho que fundamentan la adjudicación, además de añadir la advertencia del derecho a solicitar una reconsideración o revisión, según sea el caso. *J. Exam. Tec. Méd. V. Elías et al.,* 144 DPR 483, 489-490 (1997).

Por su parte, el Tribunal Supremo de Puerto Rico ha establecido que para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones, deben cumplirse dos requisitos: (i) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia y (ii) que la resolución sea final y no interlocutoria. *Simpson, Passalacqua vs. Quirós,*

*Betances,* supra. *Depto. Educ. v. Sindicato Puertorriqueño,* supra, pág. 543; *Procuradora Paciente v. MCS,* supra, págs. 34-35.

### B. Jurisdicción Primaria de la CASP

En materia de derecho administrativo, la doctrina de *jurisdicción primaria* está predicada en una norma de prelación jurisdiccional, la cual dispone que una agencia administrativa tiene la jurisdicción inicial y exclusiva para examinar una variedad de reclamaciones particulares. *Rodríguez Rivera v. De León Otaño,* 191 DPR 700, 709 (2014); *Procuradora Paciente v. MCS,* supra, pág. 35; *Ortiz v. Panel del FEI,* 155 DPR 219, 242 (2001). Siendo así, la misma exige a los tribunales de justicia auscultar el alcance de la ley habilitadora del organismo concernido, a fin de resolver si el asunto en cuestión es uno estrictamente sujeto a su ámbito de especialización. *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 430 (2012).

Nuestro estado de derecho reconoce dos vertientes que se manifiestan en la doctrina de *jurisdicción primaria,* es decir, la *jurisdicción primaria exclusiva* y la *jurisdicción primaria concurrente. Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 102 (2020); *Báez Rodríguez et al. v. E.L.A.,* 179 DPR 231, 239 (2010); *Municipio Arecibo* v. *Municipio Quebradillas,* 163 DPR 308, 326 (2004); *Rivera Ortiz v. Mun. De Guaynabo,* 141 DPR 257, 267 (1996). La jurisdicción *primaria exclusiva* hace referencia a las ocasiones en que, por virtud de ley, de manera clara e inequívoca, la autoridad de los tribunales queda postergada hasta tanto la agencia concernida entienda primero sobre el asunto. *Beltrán Cintrón et al. v. ELA et al., supra,* pág. 104.

La doctrina en cuestión veda a los tribunales de intervenir con la jurisdicción de una agencia, cuando el asunto en controversia ha sido delegado estatutariamente a la autoridad administrativa. Esto

no impide que la controversia sea atendida por los tribunales, ya que la parte interesada podrá presentar un recurso de revisión judicial eventualmente. *Rivera Ortiz v. Mun. De Guaynabo*, supra*, pág. 272; Aguilú Delgado v. P.R. Parking System,* 122 DPR 261, 266 (1988). Por ser importante al caso de marras, destacamos que la *jurisdicción exclusiva* puede ser original y apelativa. *Rivera Ortiz v. Mun. Guaynabo*, supra, pág. 268.

Sin embargo, nuestro Tribunal Supremo nos apercibió que "[a]unque jurisprudencialmente hemos establecido criterios para determinar cuándo estamos ante un caso de *jurisdicción exclusiva*, en última instancia tal designación es una facultad de la Legislatura. En este sentido, no podemos adoptar una postura tan restrictiva que tenga el efecto de, a través de nuestra función interpretativa, coartar la voluntad del legislador". *Rivera Ortiz v. Mun. Guaynabo,* supra, pág. 270.

Ahora bien, relevante al caso de epígrafe, la Comisión Apelativa del Servicio Público (CASP) fue creada mediante el Plan de Reorganización Núm. 2-2010, 3 LPRA Ap. XIII, en adelante, Plan de Reorganización, en el que se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público y la Comisión de Relaciones del Trabajo del Servicio Público. La CASP es un organismo administrativo cuasi-judicial especializado en el que se atienden casos laborales, de administración de recursos humanos y querellas, tanto al amparo de la Ley de Relaciones del Trabajo del Servicio Público, 3 LPRA sec. 1451, *et seq.,* como la Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, 3 LPRA Ap. XIII, Art.4.

Entre las funciones conferidas a la CASP en su ley habilitadora, el Artículo 8 del Plan de Reorganización, supra, dispone que:

> La Comisión tendrá, entre otras, las siguientes facultades, funciones y deberes:
>
> l) **atenderá toda querella o apelación que se presente oportunamente y que concierna a su jurisdicción**, para lo cual deberá interpretar, aplicar y hacer cumplir las disposiciones de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, conocida como la "Ley para la Administración de los Recursos Humanos en el Estado Libre Asociado de Puerto Rico y reglamentación vigente, en todo lo relativo a la administración de los recursos humanos y la relación obrero patronal;
>
> […]
>
> 3 LPRA Ap. XIII, Artículo 8.
>
> (Énfasis nuestro).

Por tanto, la CASP es un ente adjudicativo creado con jurisdicción apelativa exclusiva para atender y adjudicar las apelaciones de los empleados públicos del Gobierno de Puerto Rico. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1053 (2013). El Artículo 13 del Plan de Reorganización, supra, establece las condiciones con las cuales una parte debe cumplir para acudir ante la CASP en apelación. El procedimiento para iniciar una querella o apelación por una parte adversamente afectada en aquellos casos contemplados bajo el Artículo 11 del Plan de Reorganización, supra, establece que la parte afectada presentará un escrito de apelación a la CASP dentro del término jurisdiccional de treinta (30) días, contados a partir de la fecha en que se le notifica la acción o decisión.

Además, en su Artículo 12 el Plan de Reorganización, supra, establece que la CASP tendrá jurisdicción exclusiva sobre:

> [L]as apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los **municipios** en los casos y por las personas que se enumeran a continuación:
>
> a) cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por la Ley Núm. 45-1998, según enmendada, conocida como la "Ley de Relaciones del Trabajo del Servicio Público", alegue

que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, La Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la "Ley de Municipios Autónomos", los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable;[21]

[...]

3 LPRA Ap. XIII, Artículo 12.

### III.

La recurrente comparece ante nos mediante el recurso de marras, solicitando que revoquemos la *"Resolución y Orden Parcial"* de la CASP, en la que determinó que tenía jurisdicción para atender el reclamo de Negrón López, con relación a su cesantía del Mun. Cidra. Aduce que, amparada en su cesantía, la recurrida pretende impugnar la Ordenanza Municipal Número 13 ante la CASP. *No le asiste la razón.*

En su apelación ante la CASP, la recurrida argumenta que el Mun. Cidra enmendó una Ordenanza Municipal, de manera que los cambios pudieran propiciar las cesantías. La recurrente sostiene que la CASP no puede atender este asunto, porque para ello, tendría que anular una Ordenanza Municipal, y que para esto último, sólo el Tribunal de Primera Instancia tiene jurisdicción.

La controversia que nos ocupa fue planteada ante el TPI-Caguas y la CASP, valiéndose de dos (2) argumentos, canjeados entre ambos foros, de forma acomodaticia. En síntesis, el Mun. Cidra aduce que la CASP no tiene jurisdicción para atender la apelación de Negrón López porque no puede adjudicar sobre una Ordenanza Municipal, y que por otro lado, levanta el argumento ante el TPI-Caguas que no tiene jurisdicción sobre la impugnación de la

---

[21] La Ley 8-2017 derogó la Ley 184-2004 y la Ley 107-2020 derogó la Ley 81-1991.

Ordenanza Municipal, porque la controversia real se trata de las cesantías.

Coincidimos con las expresiones de la CASP, relacionadas a la carta de cesantía remitida por la propia recurrente, en la que advierte a Negrón López de su derecho a apelar su cesantía ante la agencia. No puede, por lo tanto, argüir el Mun. Cidra que la recurrida está vedada de una acción que él mismo le apercibió, ya que esto repercute sobre la máxima *venire contra factum propium non valet*, que impide a una parte ir contra sus propios actos. *Alonso Piñero v. UNDARE, Inc.,* 199 DPR 35, 55 (2017); *O.C.S. v. Universal,* 187 DPR 164, 172 (2012). Ahora bien, aun sin recurrir a este principio en equidad, nos resulta forzoso concluir que la CASP sí tiene jurisdicción sobre la apelación de la recurrida.

Como expusimos previamente, la Ley habilitadora de la CASP dispone que la agencia tiene el deber de atender las apelaciones que sean oportunamente presentadas ante sí. Contrario a lo argüido desacertadamente por el Mun. Cidra, Negrón López apeló dentro del término jurisdiccional ante la CASP. Además, surge del Artículo 12 del Plan de Reorganización, supra, que es precisamente esta agencia quien ostenta la jurisdicción primaria exclusiva a nivel apelativo sobre los reclamos de empleados municipales que aleguen que las acciones de su patrono afecten sus derechos estatutarios.

Si bien es cierto que tanto la derogada Ley 81-1991, vigente al momento de los hechos de este caso, y la actual Ley 107-2020, disponen que solo los tribunales podrán suspender las ordenanzas municipales, la recurrida no solicita – ni en todo ni en parte – que la CASP anule una Ordenanza Municipal. Es su petitorio, solicita que la agencia asuma su deber de revisar la cesantía, a la luz de lo dispuesto por la Ordenanza Municipal, y determine si el Mun. Cidra debe reinstalarla a su puesto.

## IV.

Por los fundamentos antes expuestos, *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Juez Domínguez Irizarry concurre sin opinión escrita.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones