ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL VI

| CRISTINA MONTIEL GONZÁLEZ<br><br>Recurrida<br><br>v.<br><br>DANNY MORA GONZÁLEZ<br><br>Recurrente | KLRA202500349 | *Revisión Administrativa* procedente del Departamento de la Familia, Administración para el Sustento de Menores<br><br>Caso núm.: 0610019<br><br>Sobre: Alimentos (Incumplimiento) |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

**Ortiz Flores, Jueza Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de octubre de 2025.

Comparece ante este foro revisor el señor Danny Mora González (Sr. Mora González; recurrente) mediante el recurso de revisión de epígrafe y nos solicita que revoquemos una *Resolución y Orden* emitida por una Jueza Administrativa de la Administración para el Sustento de Menores (ASUME) el 19 de marzo de 2025 y notificada el 24 de marzo de 2025.

Adelantamos que confirmamos la resolución recurrida.

**I**

Luego de adjudicarse el divorcio entre las partes Cristina Montiel González (Sra. Montiel González; recurrida) y Danny Mora González (Sr. Mora González; recurrente) en la jurisdicción de Carolina del Norte,[1] se fijó una pensión alimentaria a favor de los menores procreados entre ambos y otra pensión a favor de la recurrida. Posteriormente, el Sr. Mora González se mudó a residir en Puerto Rico. Por tal motivo, el 6 de octubre de 2023, el North Carolina Chatham County Child Support Enforcement Agency envió a la Oficina Central del Registro Demográfico de Puerto Rico un documento titulado *Letter of Transmittal Requesting Registration* donde solicitó que se registrara la orden de pago de las pensiones previamente

---

[1] Apéndice del recurso, págs. 104-105.

establecidas en esta jurisdicción para que se pudieran ejecutar.[2] En dicho escrito, se expone que el Sr. Mora González adeudaba la cantidad total de $167,076.00 por el período de 1 de febrero de 2020 hasta el 6 de octubre de 2023,[3] puesto que era responsable de pagar una cantidad de $2,278.00 mensuales por concepto de "child support" y $1,800.00 mensuales por concepto de "spousal support".[4]

La Administración de Sustento de Menores (ASUME) inició el proceso administrativo correspondiente y la orden quedó debidamente registrada.[5] No obstante, se sostuvo el incumplimiento con el pago de las pensiones y las cantidades adeudadas. Como corolario de lo anterior, el 19 de agosto de 2024, la Procuradora Auxiliar de la ASUME presentó ante el tribunal administrativo de la agencia, una *Moción de referido para agotar remedios administrativos* donde certificó que el recurrente poseía una deuda acumulada con un total ascendente a $204,204.00 por concepto de pensión alimentaria hasta esa fecha y que la mencionada deuda se dividía en $64,574.00 a favor de los menores y $135,552.00 a favor de la recurrida.[6] De igual manera, notificó que existía un plan de pago de $22.00 establecido por la Corte de Carolina del Norte en la fecha de 8/1/23.[7]

ASUME adujo que el recurrente fue citado por el Especialista de Pensiones Alimentarias y, a pesar de su comparecencia, la deuda continuó acumulándose. Además, no estaba disponible el mecanismo de retención de ingresos debido a que el recurrente solo poseía contratos profesionales, por lo que no existía patrono al cual emitir una orden de retención. A la luz de lo anterior, la ASUME se vio en la obligación de acudir al tribunal administrativo y solicitar el cobro de lo adeudado mediante la mencionada *Moción de referido para agotar remedios administrativos*.

---

[2] Apéndice del *Alegato de la Parte Interventora Administración para el Sustento de Menores* (Alegato), Anejo 2, págs. 3-4.
[3] *Id.*, pág. 2 y 3.
[4] *Id.*, pág. 3.
[5] Apéndice del recurso, págs. 96-106.
[6] Apéndice del recurso, págs. 94-95.
[7] Apéndice del recurso, pág. 94.

Recibida la solicitud, el 9 de octubre de 2024 se celebró vista de incumplimiento de pensión mediante videoconferencia donde el recurrente argumentó que la ASUME no ostentaba jurisdicción para cobrar una deuda alimenticia por concepto de pensión excónyuge o "spousal support".[8] La Jueza Administrativa ordenó a las partes a expresarse en torno a este asunto y concedió al Sr. Mora González un término de cinco (5) días para realizar un pago de $5,339.00 directamente a la cuenta de la Sra. Montiel González.[9] Cumplido todo lo anterior, se celebró vista de seguimiento el 13 de noviembre de 2024 y mediante *Resolución* emitida en esta misma fecha, el tribunal administrativo ordenó al recurrente acreditar el pago anterior de $5,339.00. Adicionalmente, se ordenó al Sr. Mora González a realizar un pago de $2,278.00 y un abono a la deuda por $4,112.50 para la fecha del 25 de noviembre de 2024. Por último, ordenó a la Procuradora Auxiliar de la ASUME a ampliar su posición en cuanto a la jurisdicción de la agencia para registrar y cobrar una pensión alimentaria ex-cónyuge.[10] Dicha orden se dio por cumplida el 25 de noviembre de 2025.[11]

Así las cosas y luego de algunos incidentes procesales, el tribunal administrativo de la ASUME emitió el 19 de marzo de 2025 una *Resolución y Orden* donde determinó que, conforme al derecho aplicable, la ASUME sí ostentaba jurisdicción para cobrar tanto la pensión alimentaria a favor de los menores como la pensión excónyuge en beneficio de la Sra. Montiel González.[12] Por tal motivo, ordenó lo siguiente:

1. Se ordena a la Lcda. Evelyn González Rodríguez, procuradora auxiliar de la ASUME, que provea a la Lcda. Tavárez, copia de la certificación jurada del estado sobre el balance de la deuda.
2. Se señala vista para el 13 de mayo de 2025 a las 9:00 a.m.
3. Se ordena al peticionado que realice los pagos de la pensión alimentaria a través de la ASUME.
4. Todo documento que se radique en el presente caso debe ser notificado a la representante legal del peticionado.
5. Se le concede un término de quince (15) días al peticionado para que someta su propuesta de plan de pago para pagar a deuda.

---

[8] Apéndice del recurso, págs. 89-90.
[9] Apéndice del recurso, págs. 89-93.
[10] Apéndice del recurso, págs. 66-71.
[11] Apéndice del recurso, págs. 52-54
[12] Apéndice del recurso, págs. 15-25.

6. Las partes quedaron citadas en corte abierta.[13]

Inconforme con este dictamen, el recurrente oportunamente sometió una *Moción de Reconsideración*,[14] la cual fue declarada No Ha Lugar por el tribunal administrativo.[15] Aún inconforme, el Sr. Mora González acude ante este tribunal intermedio mediante el recurso de epígrafe donde expone los siguientes señalamientos de error:

1. ERR[Ó] EL HONORABLE TRIBUNAL ADMINISTRATIVO AL DETERMINAR QUE LA ADMINISTRACI[Ó]N PARA EL SUSTENTO DE MENORES TIENE LA FACULTAD DE PROCEDER A LA RECAUDACI[Ó]N Y EJECUCI[Ó]N DE LAS OBLIGACIONES DE MANUTENCI[Ó]N DEL C[Ó]NYUGE EN UN CASO INTERAGENCIAL EN EL QUE ACT[Ú]A COMO ESTADO RECURRIDO.

2. ERR[Ó] EL HONORABLE TRIBUNAL ADMINISTRATIVO AL VALIDAR ACCIONES LLEVADAS A CABO POR LA ADMINISTRACI[Ó]N DEL SUSTENTO DE MENORES QUE NO LE HAN SIDO DELEGADAS POR LEY ESTATAL.

3. ERR[Ó] EL HONORABLE TRIBUNAL ADMINISTRATIVO AL INTERPRETAR LAS DISPOSICIONES DE LAS LEYES FEDERALES RELACIONADAS CON LA EJECUCI[Ó]N DE OBLIGACIONES DE MANUTENCI[Ó]N DEL C[Ó]NYUGE.

4. ERR[Ó] EL HONORABLE TRIBUNAL ADMINISTRATIVO AL DISPONER SOBRE EL COBRO DE UNA OBLIGACI[Ó]N DE MANUTENCI[Ó]N DE C[Ó]NYUGE SIN TENER JURISDICCI[Ó]N PARA ATENDER DICHA CONTROVERSIA

Recibido el recurso, emitimos una *Resolución* donde concedimos hasta el 1 de julio de 2025 a la parte recurrida para presentar su posición. La recurrida no presentó oposición, no obstante, compareció la ASUME como parte interventora mediante escrito titulado *Alegato de la Parte Interventora Administración para el Sustento de Menores*. Transcurrido el término concedido y al contar con la comparecencia de las partes mencionadas, nos hallamos en posición de resolver. Veamos.

**II**

**A**

La jurisdicción es el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir los casos que se someten ante su consideración. *Cruz Parrilla v. Depto. Vivienda*, 184 DPR

---

[13] Apéndice del recurso, pág. 24.
[14] Apéndice del recurso, págs. 5-14.
[15] Apéndice del recurso, págs. 1-4.

393 (2012). En ese sentido, las agencias no pueden asumir jurisdicción donde no la hay. *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 559 (2014). Es decir, "una agencia administrativa no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no está claramente autorizada por ley para ello". *DACo v. AFSCME*, 185 DPR 1, 12 (2012). Esto debido a que las agencias son criaturas creadas por una ley habilitadora que le delega los poderes necesarios para actuar en conformidad con el propósito legislativo. *Ayala Hernández v. Consejo Titulares*, *supra*, pág. 559; *López Nieves v. Méndez Torres*, 178 DPR 803 (2010). Así pues, es mediante la ley habilitadora que podemos determinar, ya sea mediante adjudicación o reglamentación, los derechos y obligaciones de quienes están sujetos a su ámbito de acción. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013, págs. 35-36.

Asimismo, es conocido que para dilucidar qué jurisdicción tiene cierta agencia administrativa en cuanto a un asunto particular se analiza el poder que la Asamblea Legislativa le delegó a esta para determinar, ya sea mediante adjudicación o reglamentación, los derechos y obligaciones de quienes están sujetos a su ámbito de acción. *Ayala Hernández v. Consejo Titulares*, *supra*, que cita a D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Forum, 2013, págs. 35-36. Para determinar la jurisdicción de una agencia administrativa, el tribunal debe remitirse a la ley orgánica y examinar el propósito de la agencia y los poderes otorgados. *Ayala Hernández v. Consejo Titulares*, *supra; DACo v. AFSCME, supra*; *D.A.Co. v. Fcia. San Martín,* 175 DPR 198, 203 (2009). La agencia administrativa solo puede llevar a cabo las funciones que se le han encomendado legislativamente, aquellas que surgen de su actividad o encomienda principal y ejercer los poderes que sean indispensables para llevar a cabo sus deberes y responsabilidades. *Ayala Hernández v. Consejo Titulares, supra*, que cita a *ASG v. Mun. San Juan*, 168 DPR 337, 343 (2006).

Al examinar la validez de una reglamentación de una agencia administrativa, los tribunales están obligados a considerar los siguientes factores: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó el poder de reglamentación; (3) si la reglamentación promulgada está dentro de los poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica; y, (5) si la reglamentación es arbitraria o caprichosa. *Ayala Hernández v. Consejo Titulares*, *supra*, que cita a *Vitas Health Care v. Hospicio La Fe et al.*, 190 DPR 56 (2014); *OEG v. Santiago Guzmán*, 188 DPR 215, 226 (2013). Por tanto, las agencias administrativas deben arribar a sus decisiones sin apartarse de la ley habilitadora aun cuando persigan un aparente propósito legítimo. *Ayala Hernández v. Consejo Titulares*, *supra*.

El Tribunal Supremo de Puerto Rico (TSPR) ha señalado que, si la agencia no tiene jurisdicción, su actuación es *ultra vires*, y, por ende, nula. *J. Exam. Tec. Med. v. Elias et al.*, 144 DPR 483, 492 (1997*)* De igual modo, "cuando se trata de un caso claro de falta de jurisdicción, el asunto es enteramente de la competencia judicial [...]". J*. Exam. Tec. Méd. v. Elías et al.*, *supra*, pág. 492; *AAA v. UIA*, 200 DPR 903, 917 (2018).

**B**

La doctrina de jurisdicción primaria aplica a la hora de determinar a qué foro le corresponde hacer una determinación inicial de un asunto en controversia. *Municipio Arecibo v. Municipio Quebradillas*, 163 DPR 308, 326 (2004). La referida doctrina tiene dos vertientes: (1) la jurisdicción primaria exclusiva o estatutaria y (2) la jurisdicción primaria concurrente o "verdadera jurisdicción primaria". *Id.* Cuando se trata de jurisdicción primaria exclusiva, la propia ley orgánica expresamente reserva al organismo administrativo la autoridad para resolver un determinado asunto en primera instancia, lo que excluye al foro judicial de facultad para intervenir inicialmente en el asunto. *Id.*, pág. 327. En estos casos, nos encontramos ante "situaciones en que no aplica la doctrina de jurisdicción primaria, debido a que la propia ley rechaza la jurisdicción concurrente

entre la agencia y el tribunal". *Id.* Así pues, "como norma general, el foro judicial carece de jurisdicción para dilucidar la controversia entre las partes si no se ha acudido previamente al foro administrativo". *Id.*

Por otro lado, "cuando el foro judicial y el administrativo comparten la facultad para dilucidar un mismo asunto" estamos ante la verdadera jurisdicción primaria o jurisdicción primaria concurrente. *CBS Outdoor v. Billboard One, Inc.*, 179 DPR 391, 405 (2010). El fundamento de esta vertiente se basa "en la deferencia judicial que merecen las agencias administrativas dada su preparación, especialización, pericia y conocimiento para atender determinados asuntos". *Id.* En los casos en que se aplica esta vertiente "los tribunales, por deferencia, le ceden al foro administrativo la oportunidad inicial de adjudicar la controversia presentada y reservan su intervención hasta después de que la agencia emita su determinación final". *Id.* No obstante, es importante señalar que la aplicación de la doctrina de la jurisdicción primaria concurrente "no implica que el ejercicio de jurisdicción del Tribunal ha sido eliminado, sino meramente aplazado o 'pospuesto'". *Municipio Arecibo v. Municipio Quebradillas supra,* pág. 326. Además, el Tribunal Supremo ha indicado que la aplicación de la doctrina de jurisdicción primaria concurrente no es automática, sino que debe aplicarse en aquellos casos en los que la naturaleza de la causa de acción y el remedio solicitado no presentan cuestiones de derecho que requieren el peritaje administrativo. Es decir, cuando lo que se plantea es puramente judicial. *CBS Outdoor v. Billboard One, Inc.*, *supra*, pág. 406. Cónsono con lo anterior, se ha pautado lo siguiente:

> No existe una fórmula precisa para determinar cuándo aplicar o no alguna excepción de la doctrina de jurisdicción primaria concurrente. **Por ello, los tribunales deben hacer una evaluación pragmática y "sopesar todos los factores y circunstancias que apuntan o no a la conveniencia de permitir que la reclamación se dilucide inicialmente en el foro administrativo".** Entre los factores a ponderarse para aplicar o no la doctrina de jurisdicción primaria se encuentran los siguientes: (a) el peritaje de la agencia sobre la controversia; (b) la complejidad técnica o especializada de la controversia; (c) la conveniencia o necesidad de una adjudicación rápida; (d) la conveniencia de utilizar técnicas

más flexibles de adjudicación; (e) lo adecuado del remedio administrativo. En fin, la aplicación o no de esta segunda vertiente "impone que se pondere y determine si es imprescindible y necesario que se resuelva [a] favor de que intervenga inicialmente la agencia". (Énfasis nuestro.) (Citas en el original omitidas.) *Id.* en la pág. 407.

**C**

Como señala el Tribunal Supremo en el caso *Aponte v. Barbosa Dieppa*, 146 DPR 558, 566 (1998), "[e]l 20 de diciembre de 1997, la Asamblea Legislativa aprobó la Ley Núm. 180 para adoptar en Puerto Rico la "Uniform Interstate Family Support Act" (UIFSA), con el nombre de "Ley Interestatal Uniforme de Alimentos entre Parientes" (LIUAP), enmendar la Ley Orgánica de la Administración de Sustento de Menores y derogar la Ley Uniforme de Reciprocidad para la Ejecución de Obligaciones sobre Alimentos". La intención legislativa de la UIFSA fue "uniformar la legislación aplicable a los procedimientos de alimentos entre los estados adoptantes". *Aponte v. Barbosa Dieppa*, *supra*, a la pág. 567.

Dicha Ley fue enmendada por la "Ley Uniforme Interestatal sobre Alimentos para la Familia" aprobada el 2 de julio de 2015 (LUIAF) la cual derogó el Artículo 1 de la LUIAP. En cuanto a la controversia que nos atañe, resulta preciso subrayar que la Sección 103 de la LUIAF dispone que el Tribunal General de Justicia y la Administración de Sustento de Menores son los tribunales de Puerto Rico. 8 LPRA sec. 1292. También define en su Sección 102 inciso 29 el concepto 'tribunal' como una "corte agencia administrativa o entidad cuasi-judicial autorizada a establecer, **ejecutar** o modificar **órdenes de pensión alimentaria** o a emitir determinaciones de filiación de menores". 8 LPRA sec. 1291. Adicionalmente, en su Sección 102 inciso 28, define 'orden de pensión alimentaria' como sigue:

> Significa una determinación, decreto, orden, decisión o mandato, ya temporera, final o sujeta a modificación, emitida en un estado o país extranjero **para beneficio de un menor, cónyuge o ex cónyuge,** la cual dispone sobre la cantidad para el sustento, cuidado médico, atrasos, manutención retroactiva o reembolso por concepto de la asistencia económica suministrada a un individuo alimentista en sustitución de una pensión alimentaria para un menor. El término puede incluir costas y gastos relacionados, intereses, retención de ingresos, ajuste automático, honorarios de

abogado razonables, así como cualquier otro remedio". (Énfasis nuestro.) 8 LPRA sec. 1291.

Por otra parte, la Sección 305 despliega los deberes y poderes del tribunal recurrido. En su inciso (b), expone lo siguiente:

(b) Un tribunal recurrido de Puerto Rico, en la medida en que no esté prohibido por otra Ley, podrá realizar uno o más de lo siguiente:

(1) **establecer o ejecutar una orden de pensión alimentaria**, modificar una orden de pensión alimentaria para un menor, determinar la orden control en cuanto a una orden u órdenes de pensión alimentaria para un menor, o determinar la filiación de un menor;

**(2) ordenar al alimentante cumplir con una orden de pensión alimentaria, especificando la cantidad a pagar y la forma de cumplir con la obligación;**

(3) ordenar la retención de ingresos;

(4) determinar la cantidad de cualquier atraso y especificar un método de pago;

(5) asegurar la efectividad de las órdenes mediante desacato civil, criminal o ambos;

(6) identificar bienes para satisfacer la orden de pensión alimentaria;

(7) constituir gravámenes sobre los bienes del alimentante y ordenar su ejecución;

(8) ordenar al alimentante a mantener informado al tribunal en torno a su dirección residencial, dirección de correo electrónico, número de teléfono, patrono, dirección del empleo y número de teléfono en el lugar de empleo;

[…] (Énfasis nuestro). 8 LPRA sec. 1325.

Mencionado lo anterior, también resulta pertinente rescatar que la Ley 180 o LUIAP, menciona en su Sección 904 que "[e]l Tribunal General de Justicia será el foro apropiado para los casos interestatales presentados antes del 1ro de julio de 1995 **y la Administración para el Sustento de Menores será el foro apropiado para aquellos que surjan a partir de dicha fecha".** (Énfasis nuestro.) 8 LPRA sec. 548c.

A la luz de lo dispuesto en los antes citados estatutos, resulta forzoso concluir que para casos interestatales como el que nos ocupa, la ASUME y el Tribunal General de Justicia ostentan una jurisdicción primaria concurrente y así lo resolvió el Tribunal Supremo de Puerto Rico en

*Rodríguez Rivera v. De León Otaño*, 191 DPR 700 (2014). En el mencionado caso, el Alto Foro tuvo la oportunidad de interpretar la LIUAP en términos de jurisdicción para atender casos interestatales y pronunció que "una mayoría de los artículos de la LIUAP, que proveen variados servicios a los ciudadanos que se acogen a esta, no distinguen entre el Tribunal General de Justicia y ASUME." *Rodríguez Rivera v. De León Otaño, supra,* pág. 714. Añade que, "conforme a las disposiciones de la LIUAP, tanto el Tribunal de Primera Instancia como ASUME tienen jurisdicción para atender casos interestatales de pensión de alimentos" y, que "[e]n casos interestatales de pensión de alimentos aplica la doctrina de jurisdicción primaria concurrente". *Id.,* págs. 715-716.

Asimismo, el Artículo 9.904 de la LIUAP "es el único artículo en la ley en que se hace alguna distinción sobre la autoridad para atender casos interestatales de pensión de alimentos, solo para establecer que ASUME será el 'foro apropiado' para atender casos interestatales de pensión de alimentos a partir del 1 de julio de 1995", lo que **"significa que ASUME es el foro más conveniente para atender los casos a partir de esa fecha".** *Rodríguez Rivera v. De León Otaño, supra,* págs. 717-718. (Énfasis nuestro.)  Como corolario de lo anteriormente expuesto, el TSPR aclara lo siguiente:

> El Tribunal General de Justicia tiene jurisdicción sobre la materia en casos interestatales bajo la Ley Interestatal Uniforme de Alimentos entre Parientes y, debido a que tanto el foro judicial como el foro administrativo se consideran tribunales de Puerto Rico para efectos de esta ley, **existe jurisdicción primaria concurrente entre ambos**. Por lo tanto, el Tribunal de Primera Instancia sí tiene jurisdicción para atender este tipo de controversias. No obstante, considerando que **la Legislatura entendió que la Administración para el Sustento de Menores (ASUME) es el foro más conveniente**, a pesar de haberle otorgado jurisdicción primaria concurrente a ambos foros, el tribunal tiene discreción para referir el caso a ASUME si entiende que es **en el mejor interés del alimentista que la agencia dilucide inicialmente el caso".** (Énfasis nuestro.) *Rodríguez Rivera v. De León Otaño, supra,* págs. 702-703.

**III**

En su recurso, el Sr. Mora González expone cuatro señalamientos de error que, por estar íntimamente relacionados entre sí, los discutiremos en conjunto. Veamos.

La médula de los errores consiste en que el tribunal administrativo de la ASUME erró en determinar que la agencia tenía la facultad de ejecutar una pensión excónyuge al alegar que dichas acciones no fueron delegadas mediante ley estatal, por lo que este no ostentaba jurisdicción para atender la controversia a causa de haber interpretado erróneamente las leyes federales aplicables. Resolvemos que no le asiste la razón.

Tal y como reseñamos en cuanto al derecho aplicable, la LIUAP y la LIUAF, ambas leyes estatales, designaron a la ASUME y al Tribunal General de Justicia como los foros con jurisdicción y competencia para atender casos interestatales. Incluso, al amparo de la Sección 904 de la LIUAP, la ASUME es el foro más apropiado para atender casos interestatales que surjan luego del 1ro de julio de 1995. A raíz de lo anterior, nuestro Tribunal Supremo interpretó que entre el Tribunal General de Justicia y la ASUME hay jurisdicción primaria concurrente. Ello implica que, aunque ambos foros poseen jurisdicción, por la deferencia judicial que merecen las agencias administrativas dada su preparación, especialización, pericia y conocimiento para atender determinados asuntos se le cede la oportunidad al foro administrativo primero.

Conforme al derecho aplicable antes citado, resolvemos que tanto la ASUME como el Tribunal General de Justicia, tienen autoridad para ejercer los deberes y poderes otorgados como tribunal recurrido en casos interestatales. Entre estos deberes y poderes se encuentra ejecutar una orden de pensión alimentaria, claramente definida en la LIAUF.[16] Por tal motivo, y de acuerdo con lo discutido, analizamos y concluimos que la ASUME posee jurisdicción para ejecutar la pensión alimentaria proveniente de Carolina del Norte debidamente registrada en Puerto Rico a favor de la

---

[16] Véase, 8 LPRA sec. 1291, inciso 28.

recurrida por concepto de pensión excónyuge, pues así se desprende del derecho aplicable citado. A esto añadimos que la ejecución de una orden de pensión alimentaria no es un asunto meramente judicial, sino que colegimos que, como la ASUME es la agencia de sustento de Puerto Rico, según la describe la LIAUF en su Sección 103, este es el foro administrativo con pericia para llevar a cabo lo solicitado mediante orden debidamente registrada. Además, subrayamos el hecho de que la Sra. Montiel González es la persona custodia de los menores, por lo que tampoco vemos que esté en el mejor interés de estos dividir en dos foros la manera en que se ejecute la orden interestatal y máxime cuando el foro originador emitió su orden de pensión en conjunto.

En resumen, resolvemos que el tribunal administrativo de la ASUME tiene la facultad para recaudar y ejecutar una pensión excónyuge en un caso interestatal puesto que son acciones delegadas a la agencia por medio de ley estatal. Así se reafirma que el tribunal administrativo posee jurisdicción para atender y disponer sobre la controversia del caso. Reafirmamos que, conforme al derecho aplicable y su jurisprudencia interpretativa, en cuanto a casos interestatales, la ASUME y el Tribunal General de Justicia poseen jurisdicción primaria concurrente.

Conforme a lo antes expresado, se confirma el dictamen recurrido en todos sus extremos.

**IV**

Por los fundamentos arriba esbozados, se confirma íntegramente la resolución recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones