```
ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]
```

| | | |
|---|---|---|
| ACELERA INTERNATIONAL CUSTODIAL BANK, LLC<br><br>Parte Apelante<br><br><br>v.<br><br><br>OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS; NATALIA I. ZEQUEIRA DÍAZ, en su carácter personal como Comisionada de la referida entidad; ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por su Secretario de Justicia, DOMINGO EMANUELLI HERNÁNDEZ<br><br>Parte Apelada | TA2025AP00417 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV06298<br><br>Sala: 908<br><br>Sobre: Mandamus, Injunction Preliminar y Permanente, Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Salgado Schwarz, el Juez Monge Gómez Y el Juez Ronda Del Toro.[2]

Salgado Schwarz, Carlos G., Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de diciembre de 2025.

Comparece ante nos Acelera International Custodial Bank LLC (en adelante, "Acelera" o "apelante") y nos solicita que revoquemos la *Sentencia* emitida el 6 de agosto de 2025, notificada el día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el referido dictamen, el foro primario

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLAN202500058)

[2] Mediante Orden Administrativa OATA-2025-192 del 7 de octubre de 2025 se designa al Hon. Eric R. Ronda Del Toro en sustitución del Hon. Félix R. Figueroa Cabán.

declaró *Ha Lugar* la *Moción de Desestimación*[3], presentada por la Oficina del Comisionado de Instituciones Financieras (en adelante, "OCIF"), y la *Moción de Desestimación por la Comisionada de Instituciones Financieras de Puerto Rico, en su Capacidad Personal*[4], presentada por Natalia I. Zequeira Díaz, Comisionada de Instituciones Financieras de Puerto Rico (en adelante, "Zequeira Díaz" o "Comisionada"). En su consecuencia, desestimó la *Demanda* presentada por Acelera en contra de la OCIF, las alegaciones de la *Demanda* contra la Comisionada en su capacidad personal, y desestimó, asimismo, la tercera, cuarta, quinta, sexta y octava causas de acción, sin perjuicio.

Por los fundamentos que exponemos a continuación, **confirmamos** la *Sentencia* apelada.

-I-

El 3 de julio de 2024, Acelera presentó una *Demanda*[5] en contra de la OCIF y la Comisionada en la que alegó, en síntesis, que la OCIF y la Comisionada le privaron ilegalmente, y sin debido proceso de ley, de su capacidad para operar como una entidad bancaria internacional ("IBE"), al imponerle un síndico para su cierre y liquidación. Adujo que la Comisionada: (a) inició una acción regulatoria frívola en su contra ante el tribunal administrativo de la OCIF; (b) que le coaccionó para firmar un Acuerdo de Transacción ("Acuerdo") abusivo y en contra de la moral y el orden público, bajo la amenaza de forzar la liquidación injustificada del IBE; (c) que

---

[3] Apéndice #11 del Recurso Apelativo, Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).
[4] Apéndice #44 del Recurso Apelativo, Entrada Núm. 1 del SUMAC TA.
[5] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).

abusó de su poder regulatorio al declarar de forma *ex parte*, unilateral e injustificadamente que Acelera había incumplido sus obligaciones bajo el referido Acuerdo de Transacción; (d) que emitió una *Resolución* que viola el Artículo 3.7 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38 de 30 de junio de 2017, según enmendada, al determinar que Acelera había incumplido el Acuerdo de Transacción y ordenar su liquidación bajo la supervisión de un síndico seleccionado y designado por la OCIF; y (e) que emitió la orden sin darle oportunidad de presentar evidencia en apoyo a su posición de que no había incumplido con dicho Acuerdo. Además, arguyó que la Resolución establece expresamente que Acelera no tiene derecho a solicitar reconsideración de la determinación de la OCIF, ni a presentar un recurso de revisión judicial para impugnar su validez, en violación de la LPAU.

Por su parte, el 18 de julio de 2024, la OCIF y la Comisionada, únicamente en su capacidad oficial como Comisionada de la OCIF, presentaron una *Moción de Desestimación*[6] en la que sostuvieron que el foro de instancia carecía de jurisdicción, puesto que la OCIF ostenta jurisdicción primaria exclusiva para atender las reclamaciones o controversias relacionadas a las entidades bancarias internacionales. Adujo, asimismo, que la *Demanda* presentada no justifica la concesión de un remedio en derecho, ya que existe un Acuerdo entre las partes que rige la controversia, y que, por el

---

[6] Entrada # 11 del SUMAC TPI.

contrario, Acelera incumplió con sus obligaciones bajo dicho Acuerdo.

El 1 de agosto de 2024, Acelera presentó una *Oposición a Moción de Desestimación*[7] en la que sostuvo que las alegaciones contenidas en la *Demanda* fueron apropiadamente presentadas y justificaban un remedio, ya que la OCIF no llevó a cabo una vista adjudicativa antes de determinar que Acelera había incurrido en incumplimiento, dentro del contexto del Acuerdo. Alegó que la OCIF emitió una Resolución *ultra vires*, lo que ameritaba la intervención del foro de instancia.

El 15 de agosto de 2024, mediante una *Réplica a Oposición a Moción de Desestimación*[8], la OCIF y la Comisionada, únicamente en su capacidad oficial como Comisionada de la OCIF, alegó que el Acuerdo suscrito fue un contrato consensual, libremente negociado y voluntariamente aceptado por ambas partes. Adujo que este tipo de acuerdos deben interpretarse de manera restrictiva y que este incluyó una renuncia explícita por parte de Acelera a su derecho a una vista administrativa ante la OCIF, así como cualquier revisión judicial de la Resolución emitida por la Comisionada.

En respuesta, el 29 de agosto de 2024, Acelera presentó una *Dúplica a Réplica a Oposición de Moción de Desestimación*[9] en la que sostuvo que el Acuerdo se suscribió bajo dolo, ya que la Comisionada indujo a Acelera a firmar el Acuerdo mediante representaciones falsas y engañosas. Alegó que OCIF le envió un "First Notice of Default" y no le permitió oportunidad de

---

[7] Entrada # 27 del SUMAC TPI.
[8] Entrada # 39 del SUMAC TPI.
[9] Entrada # 43 del SUMAC TPI.

remediar los incumplimientos que, según Acelera, consistían de unos defectos de forma en la documentación sometida por Acelera en cumplimiento al Acuerdo.

Por otra parte, el 3 de septiembre de 2024, Zequeira Díaz, Comisionada de la OCIF, en su capacidad personal, presentó una *Moción de Desestimación por la Comisionada de Instituciones Financieras de Puerto Rico, en su Capacidad Personal*[10] mediante la cual alegó que ostenta inmunidad cualificada de funcionarios públicos y que, por ello, procede la desestimación de las reclamaciones en su contra, en su carácter personal. Sostuvo que actuó dentro del ámbito de su autoridad discrecional, determinada por las leyes y reglamentos que regulan la operación de las entidades bancarias internacionales en Puerto Rico y que no existe evidencia alguna de que su conducta haya sido irrazonable o que hubiera violado derechos estatutarios o constitucionales claramente establecidos.

Acelera, el 7 de octubre de 2024, presentó una *Oposición a Segunda Moción de Desestimación por la Comisionada de Instituciones Financieras de Puerto Rico, en su Capacidad Personal*[11] en la que alegó que la *Demanda* presentó alegaciones claras de violaciones de derechos constitucionales por parte de Zequeira Díaz, al ejecutar medidas que conocía que excedían los límites de su autoridad como Comisionada, en perjuicio de los derechos constitucionales de Acelera, con el fin de forzar la liquidación de esta. Arguyó que Zequeira Díaz ordenó sumariamente el cierre y liquidación de la institución

---

[10] Entrada # 44 del SUMAC TPI.
[11] Entrada # 57 del SUMAC TPI.

financiera y que le negó a Acelera cualquier oportunidad de defenderse, violando su debido proceso de ley.

En respuesta, Zequeira Díaz, el 21 de octubre de 2024 presentó su *Réplica a Oposición a Segunda Moción de Desestimación por la Comisionada de Instituciones Financieras de Puerto Rico, en su Capacidad Personal*[12] en la que sostuvo que Acelera no presentó alegaciones suficientes que justifiquen la necesidad de evaluar prueba ni identificó un derecho constitucional violado que supere el umbral de plausibilidad requerido para derrotar la inmunidad cualificada.

Luego de varios trámites procesales, el foro de instancia emitió una *Sentencia* el 6 de agosto de 2025, notificada el día siguiente.[13] En el referido dictamen, declaró *Ha Lugar* la *Moción de Desestimación,* presentada por la OCIF, y la *Moción de Desestimación por la Comisionada de Instituciones Financieras de Puerto Rico, en su Capacidad Personal*, presentada por la Comisionada. En su consecuencia, desestimó la *Demanda* presentada por Acelera en contra de la OCIF, las alegaciones de la *Demanda* contra la Comisionada, en su capacidad personal, y desestimó, asimismo, la tercera, cuarta, quinta, sexta y octava causas de acción, sin perjuicio. En síntesis, concluyó que, ya que el proceso administrativo se está llevando a cabo, según el Acuerdo otorgado entre las partes, la *Demanda* es una duplicidad innecesaria de recursos y es la agencia el organismo adecuado para considerar inicialmente la causa de acción. En cuanto a las alegaciones en contra de la Comisionada en su

---

[12] Entrada # 82 del SUMAC TPI.
[13] Entrada # 121 del SUMAC TPI.

capacidad personal, concluyó que la apelante no expuso en su *Demanda* hechos fácticos suficientes demostrativos de las supuestas actuaciones ilegales de esta, sino que, por el contrario, contiene alegaciones conclusorias y alegaciones de derecho que no cumplen con la normativa sobre la suficiencia de las alegaciones en una demanda.

Inconforme con dicha determinación, el 6 de octubre de 2025, Acelera acudió ante nos mediante el recurso de Apelación e hizo los siguientes señalamientos de error:

> **PRIMERO:** ERRÓ EL TPI AL DETERMINAR QUE NO ES EL FORO ADECUADO PARA CONSIDERAR LA PRESENTE ACCIÓN.
>
> **SEGUNDO:** ERRÓ EL TPI AL DETERMINAR QUE LA DEMANDA NO CONTIENE HECHOS FÁCTICOS SUFICIENTES SOBRE LAS ACCIONES ILEGALES DE LA COMISIONADA.

Con la comparecencia de ambas partes, procedemos a resolver la controversia ante nos.

## -II-

### A. Jurisdicción

La jurisdicción es el poder o la autoridad que posee un tribunal o un organismo administrativo para considerar y decidir los casos que se someten ante su consideración.[14] En ese sentido, las agencias no pueden asumir jurisdicción donde no la hay.[15] Es decir, "una agencia no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no está claramente autorizada por ley para ello".[16] Esto debido a que las agencias son criaturas creadas por una ley habilitadora que le delega los poderes

---

[14] *Cruz Parrilla v. Depto. Vivienda*, 184 DPR 393, 403 (2012).
[15] *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 559 (2014).
[16] *DACo v. AFSCME*, 185 DPR 1, 12 (2012).

necesarios para actuar en conformidad con el propósito legislativo.[17] Así pues, es mediante la ley habilitadora que podemos determinar, ya sea mediante adjudicación o reglamentación, los derechos y obligaciones de quienes están sujetos a su ámbito de acción.[18]

Asimismo, es conocido que para dilucidar qué jurisdicción tiene cierta agencia administrativa en cuanto a un asunto particular, se analiza el poder que la Asamblea Legislativa le delegó a esta para determinar, ya sea mediante adjudicación o reglamentación, los derechos y obligaciones de quienes están sujetos a su ámbito de acción.[19] Para determinar la jurisdicción de una agencia administrativa, el tribunal debe remitirse a la ley orgánica y examinar el propósito de la agencia y los poderes otorgados.[20] La agencia administrativa solo puede llevar a cabo las funciones que se le han encomendado legislativamente, aquellas que surgen de su actividad o encomienda principal y ejercer los poderes que sean indispensables para llevar a cabo sus deberes y responsabilidades.[21]

El Tribunal Supremo de Puerto Rico ha señalado que, si la agencia no tiene jurisdicción, su actuación es *ultra vires*, y, por ende, nula.[22] De igual modo, "cuando se trata de un caso claro de falta de

---

[17] *Ayala Hernández v. Consejo Titulares*, *supra*, pág. 559; *López Nieves v. Méndez Torres*, 178 DPR 803, 810 (2010).
[18] D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013, págs. 35-36.
[19] *Ayala Hernández v. Consejo Titulares*, *supra*, citando a D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Forum, 2013, págs. 35-36.
[20] *Ayala Hernández v. Consejo Titulares*, *supra*; *DACo v. AFSCME*, *supra*; *DACo v. Fcia. San Martín*, 175 DPR 198, 203 (2009).
[21] *Ayala Hernández v. Consejo Titulares, supra*, citando a *ASG v. Mun. San Juan*, 168 DPR 337, 343 (2006).
[22] *J. Exam. Tec. Med. v. Elias et al.*, 144 DPR 483, 492 (1997).

jurisdicción, el asunto es enteramente de la competencia judicial [...]".[23]

## B. Jurisdicción Concurrente

La doctrina de jurisdicción primaria aplica a la hora de determinar a qué foro le corresponde hacer una determinación inicial de un asunto en controversia.[24] La referida doctrina tiene dos vertientes: (1) la jurisdicción primaria exclusiva o estatutaria y (2) la jurisdicción primaria concurrente o "verdadera jurisdicción primaria".[25] Cuando se trata de jurisdicción primaria exclusiva, la propia ley orgánica expresamente reserva al organismo administrativo la autoridad para resolver un determinado asunto en primera instancia, lo que excluye al foro judicial de facultad para intervenir inicialmente en el asunto.[26] En estos casos, nos encontramos ante "situaciones en que no aplica la doctrina de jurisdicción primaria, debido a que la propia ley rechaza la jurisdicción concurrente entre la agencia y el tribunal".[27] Así pues, "como norma general, el foro judicial carece de jurisdicción para dilucidar la controversia entre las partes si no se ha acudido previamente al foro administrativo".[28]

Por otro lado, "cuando el foro judicial y el administrativo comparten la facultad para dilucidar un mismo asunto" estamos ante la verdadera jurisdicción primaria o jurisdicción primaria concurrente.[29] El

---

[23] *J. Exam. Tec. Med. v. Elías et al.*, *supra*, pág. 492; *AAA v. UIA*, 200 DPR 903, 917 (2018).
[24] *Municipio Arecibo v. Municipio Quebradillas*, 163 DPR 308, 326 (2004).
[25] *Íd.*
[26] *Íd.*, pág. 327.
[27] *Íd.*
[28] *Íd.*
[29] *CBS Outdoor v. Billboard One, Inc.*, 179 DPR 391, 405 (2010).

fundamento de esta vertiente se basa "en la deferencia judicial que merecen las agencias administrativas dada su preparación, especialización, pericia y conocimiento para atender determinados asuntos".[30] En los casos en que se aplica esta vertiente "los tribunales, por deferencia, le ceden al foro administrativo la oportunidad inicial de adjudicar la controversia presentada y reservan su intervención hasta después de que la agencia emita su determinación final".[31] No obstante, es importante señalar que la aplicación de la doctrina de la jurisdicción primaria concurrente "no implica que el ejercicio de jurisdicción del Tribunal ha sido eliminado, sino meramente aplazado o 'pospuesto'".[32] Además, el Tribunal Supremo ha indicado que la aplicación de la doctrina de jurisdicción primaria concurrente no es automática, sino que debe aplicarse en aquellos casos en los que la naturaleza de la causa de acción y el remedio solicitado no presentan cuestiones de derecho que requieren el peritaje administrativo. Es decir, cuando lo que se plantea es puramente judicial.[33] Cónsono con lo anterior, se ha dispuesto que:

> No existe una fórmula precisa para determinar cuándo aplicar o no alguna excepción de la doctrina de jurisdicción primaria concurrente. **Por ello, los tribunales deben hacer una evaluación pragmática y "sopesar todos los factores y circunstancias que apuntan o no a la conveniencia de permitir que la reclamación se dilucide inicialmente en el foro administrativo".** Entre los factores a ponderarse para aplicar o no la doctrina de jurisdicción primaria se encuentran los siguientes: (a) el peritaje de la agencia sobre la controversia; (b) la complejidad técnica o especializada de la controversia; (c) la conveniencia o necesidad de una adjudicación rápida; (d) la conveniencia de utilizar técnicas más flexibles de adjudicación; (e) lo adecuado del remedio administrativo. En fin, la aplicación o no de esta segunda vertiente "impone que se pondere

---

[30] *Íd.*
[31] *Íd.*
[32] *Municipio Arecibo v. Municipio Quebradillas, supra,* pág. 326.
[33] *CBS Outdoor v. Billboard One, Inc., supra*, pág. 406.

y determine si es imprescindible y necesario que se resuelva [a] favor de que intervenga inicialmente la agencia". (Énfasis nuestro.) (Citas en el original omitidas.)[34]

## C. Alegaciones

Las alegaciones en una demanda tienen el propósito de presentarle al tribunal los hechos en que las partes apoyan o niegan el derecho en controversia, precisar aquellos que las partes acepten como ciertos y señalar aquellos que consideran están en controversia y sobre lo cuales se presentará prueba para que el tribunal formule las conclusiones procedentes.[35] La Regla 6.1 de Procedimiento Civil establece la norma sobre la formulación de alegaciones en una demanda y dispone lo siguiente:

Una alegación que exponga una solicitud de remedio contendrá:

(1) Una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y

(2) Una solicitud del remedio a que crea tener derecho. Podrán ser solicitados remedios alternativos o de diversa naturaleza.[36]

Nuestro más alto foro ha determinado que al amparo de la Regla 6.1 de Procedimiento Civil, *supra*, "*no tienen que exponerse detalladamente en la demanda todos los hechos que dan base a la reclamación.*"[37] "*[A] la parte que persigue un remedio solo [sic] se le requiere presentar en su alegación una reclamación redactada de forma general.*"[38]

La Regla 6.1, 2009, al igual que su equivalente federal, impone al demandante una obligación relativamente leniente. Un demandante cumple con

[34] *Íd.* en la pág. 407.
[35] R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho procesal civil, 6ª ed. Rev., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 279.
[36] 32 LPRA Ap. V, R. 6.1.
[37] *León Torres v. Rivera Lebrón*, 204 DPR 20, 40 (2020).
[38] J.A. Echevarría Vargas, Procedimiento civil puertorriqueño, 3ª ed. Rev. Bogotá, Ed. Nomos S.A., 2023, pág. 95

la exigencia de la regla al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular su contestación. […] **No obstante, si bien el deber que se le exige al demandante es bastante liberal y se le requiere brevedad en su exposición, la alegación debe aún contener la suficiencia fáctica que se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta.**(*Énfasis Nuestro*).[39]

Por lo tanto, la información contenida en una demanda "*debe estar a tono con los requisitos mínimos de notificación según requiere el debido proceso de ley.*"[40] Aunque un demandante no tenga que alegar todos los hechos específicos que responsabilicen a un demandado, sí debe alegar hechos que no sean hipotéticos y que no estén basados en conclusiones de derecho.

### D. Inmunidad Condicionada

La inmunidad condicionada protege a los funcionarios públicos contra reclamaciones de daños en su carácter personal por el hecho de haber ejercido, de forma razonable y de buena fe, las funciones oficiales que contienen un elemento de discreción.[41] Como cuestión de política pública, se ha extendido esta protección a los funcionarios públicos que toman decisiones discrecionales en el ejercicio de sus deberes. Así pues, se persigue que los funcionarios puedan actuar con libertad para tomar aquellas decisiones pertinentes al cargo que ocupan, sin sentir presiones o amenazas contra sus patrimonios.[42]

La inmunidad es una defensa afirmativa y el peso de la prueba recae sobre el funcionario demandado que reclame esta protección.[43] Si un funcionario público

---

[39] R. Hernández Colón, *supra*, pág. 287.
[40] *León Torres v. Rivera Lebrón*, supra, pág. 40.
[41] *De Paz Lisk v. Aponte Roque*, 124 DPR 472, 495 (1989).
[42] *Id.*
[43] *Acevedo v. Srio. Servicios Sociales*, 112 DPR 256, 263 (1982).

plantea que sus acciones estuvieron cobijadas bajo la inmunidad condicionada, es recomendable que la controversia sea resuelta antes de la celebración del juicio. Ello, toda vez que el reconocimiento de la inmunidad condicionada implica la inexistencia de una causa de acción contra el funcionario público en su carácter personal.[44]

La inmunidad condicionada es una inmunidad separada y distinta de aquella que se le reconoce al Estado por las actuaciones negligentes de sus funcionarios, empleados o agentes.[45] Mientras que la doctrina de inmunidad del Estado opera como una limitación de responsabilidad civil respecto a la entidad gubernamental como cuerpo político, las normas de inmunidad condicionada operan como una limitación civil a los patrimonios personales de los funcionarios públicos.[46]

Ahora bien, la inmunidad condicionada no es una protección absoluta. La inmunidad no cubre actuaciones dolosas, maliciosas o delictivas de un funcionario en el ejercicio de sus funciones.[47] Asimismo, "[u]n funcionario o empleado que no actúa de buena fe es responsable, pero aun cuando medie la buena fe responde si actuó irrazonablemente o si debió haber sabido que su conducta era ilegal. […] La razonabilidad de la actuación oficial constituye una cuestión de hecho a determinarse caso a caso".[48]

---

[44] *García v. ELA*, 163 DPR 800, 820-821 (2005).
[45] *Romero Arroyo v. ELA*, 127 DPR 724, 744 (1991).
[46] *Id.*, pág. 745.
[47] *In re Colton Fontán*, 128 DPR 1, 8 (1991).
[48] *Acevedo v. Srio. de Servicios Sociales*, *supra*, pág. 262 (citas omitidas).

### E. Ley de la Oficina del Comisionado de Instituciones Financieras y Ley Reguladora del Centro Bancario Internacional

La Ley de la Oficina del Comisionado de Instituciones Financieras,[49] dispone en su Artículo 10 las facultades que ostenta el Comisionado. En específico, establece:

(a) El Comisionado, además de los poderes y facultades transferidos por la presente, tendrá poderes y facultades para:

[…]

(4) Interponer cualesquiera remedios, acciones o procedimientos legales que fueran necesarios o convenientes para hacer efectivos los propósitos de esta ley o cualquier otra ley o reglamento, cuyo cumplimiento o fiscalización le haya sido asignada, ya sea representado por sus abogados o por el Secretario de Justicia, previa solicitud a tales efectos.[50]

Por otro lado, la Ley Reguladora del Centro Bancario Internacional,[51] establece, como parte de la autoridad y deberes de Comisionado, en su Sección 3(a)(8), "velar por la seguridad financiera y adecuacidad operacional de las entidades bancarias internacionales y asegurarse de que cumplan con las leyes y reglamentos aplicables y con cualquier medida o requisito que el Comisionado les requiera mediante orden, reglamento o carta circular o documentos guía aplicables a las EBIs".[52]

Esbozada la norma jurídica, procedemos a resolver la controversia ante nos.

---

[49] La Ley de la Oficina del Comisionado de Instituciones Financieras, Ley Núm. 4 de 11 de octubre de 1985, según enmendada, (Ley Núm. 4-1985).
[50] 7 LPRA sec. 2010.
[51] Ley Reguladora del Centro Bancario Internacional, Ley Núm. 52 de 11 de agosto de 1989, según enmendada (Ley Núm. 52-1989).
[52] 23 LPRA sec. 232a.

## -III-

En su primer señalamiento de error, la parte apelante sostiene que erró el foro de instancia al determinar que no es el foro adecuado para considerar la presente acción. Al analizar el expediente ante nos, se desprende que las partes se encuentran ventilando, entre sí, un proceso de naturaleza administrativa desde el año 2022. Como resumen breve del desarrollo de los hechos en el ámbito administrativo, el 27 de mayo de 2022, la OCIF emitió un "Consent Order" ("Orden") con el propósito de abordar los hallazgos establecidos en un "Report of Examination", realizado en el año 2022, de la entidad bancaria, que en ese momento se encontraba bajo otro nombre. Esto, con el fin de resolver "an inordinate volumen of weaknesses and a combination of other conditions that are less than satisfactory", por medio del cumplimiento de la entidad, y así evitar procedimientos prolongados y costosos.

El 31 de mayo del mismo año, la entidad, por medio de su presidente de la junta directiva, Warren Raiti (en adelante "Raiti" o "presidente") consintió a la Orden, renunció a su derecho a una vista y apelación en cuanto a ese asunto, admitió la jurisdicción de la OCIF y consintió la mencionada Orden como acuerdo de los asuntos contenidos en ella.

Posteriormente, en febrero de 2023, la OCIF y la entidad bancaria, bajo otro nombre previo, presentaron en conjunto un "Settlement Agreement", en el que acordaron resolver las cuestiones relevantes a un "Complaint", presentado por la OCIF, por ciertos incumplimientos por parte de la entidad. Sucesivamente,

se presentaron, entre otras cosas, una Orden Enmendada de Acción Inmediata y su Contestación, hasta finalmente llegar al Acuerdo de Transacción, suscrito entre las partes el 31 de enero de 2024.

Al analizar la secuencia de eventos, es evidente que ya había comenzado un proceso en el ámbito administrativo entre las partes. Más aún, es norma establecida que, cuando exista jurisdicción primaria concurrente, las agencias administrativas merecen una deferencia judicial, dada su preparación, especialización, pericia y conocimiento para atender determinados asuntos.[53] En este caso, al estar ante un Acuerdo fundamentado en la *Ley de la Oficina del Comisionado de Instituciones Financieras* y la *Ley Reguladora del Centro Bancario Internacional*, indudablemente es la OCIF quien cuenta con el conocimiento y pericia para atender los asuntos planteados por la apelante. Ya que había comenzado un proceso frente a la propia agencia, correctamente concluyó el foro de instancia que el caso de epígrafe viene a ser una duplicidad innecesaria de recursos. No se cometió el primer error.

Como segundo error, la parte apelante sostiene que el foro primario erró al determinar que la *Demanda* no contiene hechos fácticos suficientes sobre las acciones ilegales de la Comisionada. Al analizar cuidadosamente las alegaciones contenidas en la *Demanda*, específicamente aquellas concernientes a la Comisionada, en su capacidad personal, es forzoso concluir que dichas alegaciones no son suficientes para justificar la

---

[53] *CBS Outdoor v. Billboard One, Inc.*, supra, 405.

concesión de un remedio en su carácter personal. Y es que, las alegaciones en su contra son la privación de la licencia a la entidad bancaria, por su incumplimiento con el Acuerdo, y el nombramiento un síndico para la liquidación de la entidad. En primer lugar, dichas alegaciones son la consecuencia pre acordadas, y consentidas por ambas partes, ante el incumplimiento de la entidad. En segundo lugar, esas acciones están contenidas dentro de las facultades delegadas por ley a la Comisionada, entre ellos, el Artículo 10 de la Ley Núm. 4-1985, *supra*, que enumera las facultades del Comisionado y la Sección 3 de la Ley Núm. 52-1989, *supra*, el cual dispone la autoridad y deberes del Comisionado. Ambas leyes le otorgan la autoridad a la Comisionada, como parte de sus deberes, imponer los remedios necesarios para hacer cumplir dichas leyes y realizar los actos necesarios para lograr eficazmente su propósito. Al analizar las facultades delegadas a la Comisionada por ley, y las alegaciones hechas en su contra, en su carácter personal, no cabe otra conclusión que dichas alegaciones no rebaten la inmunidad que cobija las funciones oficiales realizadas por esta. A nuestro juicio, la Comisionada actuó razonablemente dentro de los poderes delegados por ley y según el Acuerdo suscrito entre las partes. No se cometió el segundo error. Por lo tanto, resulta forzoso confirmar la determinación del foro apelado.

-IV-

A la luz de los fundamentos antes expresados, se confirma la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*